---

### Circuit Court Case No. 12-56120

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

ERIK KNUTSON, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY
SITUATED,
PLAINTIFFS-APPELLANTS,

v.

SIRIUS XM RADIO INC.,
DEFENDANT-APPELLEE.

---

ON APPEAL FROM AN ORDER OF THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA

DISTRICT COURT CASE NO.: 12CV418 AJB (NLS)

---

### OPENING BRIEF FOR THE APPELLANTS
ERIK KNUTSON

---

**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (SBN 249203)
ak@kazlg.com
Mohammad Kazerouni, Esq. (SBN 252835)
mike@kazlg.com
2700 N. Main Street, Ste. 1000
Santa Ana, California 92705
Telephone: (800)400-6808
Facsimile: (800)520-5523

[Other Attorneys of Record Listed on Signature Page]

Attorneys for Plaintiffs-Appellants

---

# VOLUME #1

# TABLE OF CONTENTS

**CAPTION**……………………………………………………Cover

**TABLE OF CONTENT**……………………………………………..I

**TABLE OF AUTHORITIES**……………………………………...IV

**I. JURISDICTIONAL STATEMENT**……………………………1

    **A.  Basis For The District Court's Jurisdiction**…………………………1

    **B.  Basis For The Court Of Appeals' Jurisdiction**…………………...1

    **C.  Filing Date of The Appeal**………………………...………………...1

    **D.  Assertion That Appeal Is From a Final Order Or Judgment That Disposes Of All Parties' Claims Or Information Establishing The Court of Appeals' Jurisdiction On Some Other Basis**………………2

**II.  STATEMENT OF ISSUES PRESENTED FOR REVIEW**………......…..2

**III. STATEMENT OF THE CASE**……………………...…………………3

**IV. STATEMENT OF FACTS**…………………………………..……3

    **A.  Background**……………………………………………………3

    **B.  Sirius' Motion To Compel Arbitration**………………………8

    **C.  District Court's Ruling on Sirius' Motion To Compel Arbitration**...9

**V.  SUMMARY OF THE ARGUMENT**………………...………………...9

**VI. ARGUMENT**………………………………………………13

    **A.  Standard of Review**………………………………...……………...13

OPENING BRIEF FOR THE APPELLANT        DOCKET NO. 12-56120

**B.  Knutson Cannot Be Held To The Terms of The Arbitration Clause**
    **Contained Within The Customer Agreement Absent A Showing That The Parties Thereto Entered Into The Customer Agreement In Accordance With California's Laws on Contract Formation**….13

**C.  The District Court Erred In Finding The Existence Of A Binding Arbitration Agreement Given That There Was No Assent By Knutson To Enter Into The Customer Agreement**……………….…..16

    **1.  Mutual Assent Is Required To Form Any Contract In California**.............................................................................16

    **2.  There Was No Mutual Assent to Enter Into the Customer Agreement As Knutson Was Never Given The Opportunity To Accept Or Reject The Customer Agreement**……………………………………………………....17

        a.  *Knutson did not assent to the Customer Agreement, given that the Customer Agreement was not called to Knutson's attention until after the timeframe provided by Sirius to reject the Customer Agreement had expired*……………………………………………19

        b.  *Knutson's continued use of Sirius' services does not constitute assent to the terms of the Customer Agreement, given that by the time the Customer Agreement was finally provided to Knutson, the timeframe provided by Sirius to reject the Customer Agreement had expired*………………………………..22

    **3.  It Would Not Be Unrealistic Or An Economic Burden For Sirius To Change The Terms Of Its Customer Agreement, So That The Consumer Had Time To Reject The Customer Agreement**…………………………..23

**D. The District Court Erred in Failing to Find The Customer Agreement Unenforceable On The Ground of Unconscionability**...27

    **1. The District Court Properly Held That The Customer Agreement Was Procedurally Unconscionable**…..………28

    **2. The One-Sided Nature Of The Customer Agreement Renders It Substantively Unconscionable**………………30

        a. *The Customer Agreement is lacking in mutuality and an actual notice requirement*…………………………..31

        b. *The Customer Agreement precludes statutory remedies and punitive damages*………………………36

        c. *Customer plaintiffs may have to pay Sirius' attorney's fees*……………………………………………..38

        d. *Sirius carves out for itself the right to litigate certain claims*……………………………………………39

        e. *The contingent forum selection clause disadvantages Knutson*……………………………………………..39

        f. *The class action waiver favors only the drafting party*…40

**VII. CONCLUSION**………………………………………………43

**STATEMENT OF RELATED CASES**…………………………….Page (a)

**CERTIFICATE OF COMPLIANCE**…………………………….Page (b)

**CERTIFICATE OF SERVICE**……………………………………..Page (b)

**VOLUME #2**

**EXCERPTS OF RECORD ("E.R.")**……………………………….passim

# TABLE OF AUTHORITIES

## Cases

*American Software, Inc. v. Ali*,
    46 Cal. App. 4th 1386 (Cal. App. 1st Dist. 1996)…………………………12

*Armendariz v. Foundation Health Psychcare Services, Inc.*,
    24 Cal.4th 83 (Cal. 2000)………………………………………………27, 36

*AT&T Mobility LLC v. Concepcion*,
    131 S. Ct. 1740 (S.Ct. 2011)……………………………………………...16, 30

*Beatty Safway Scaffold, Inc. v. Skrable*,
    180 Cal. App. 2d 650 (Cal. App. 4th Dist. 1960)......................................22

*Bischoff v. DirectTV*,
    180 F. Supp. 2d 1097 (C.D. Cal. 2002).........................................23, 25, 26

*Bushley v. Credit Suisse First Boston*,
    360 F.3d 1149 (9th Cir. 2004)……………………………………………...13

*Circuit City Stores, Inc. v. Adams*,
    279 F. 3d 889 (9th Cir. 2002).......................................................................13

*Circuit City Stores, Inc. v. Najd*,
    294 F. 3d 1104 (9th Cir. 2002).....................................................................22

*Cisneros v. Am. Gen. Fin. Services, Inc.*,
    C 11-02869 CRB, 2012 WL 3025913 (N.D. Cal. July 24, 2012)……...29, 39

*Coneff v. AT & T Corp.*,
    673 F.3d 1155 (9th Cir. 2012)…………………………………………..…28

*Corey v. Golden state Bank*,
    95 Cal. App. 3d 360 (Cal. App. 2nd Dist. 1979)…………………………..…20

*Davis v. O'Melveny & Myers,*
   485 F.3d 1066 (9th Cir. 2007)……………………………………………..30

*Dean Witter Reynolds, Inc. v. Byrd,*
   470 U.S. 213 (S. Ct. 1985).........................................................................14

*Doctor's Associates, Inc. v. Casarotto,*
   517 U.S. 681 (S.Ct. 1996)…………………………………………………15

*First Options of Chicago, Inc. v. Kaplan,*
   514 U.S. 938 (S. Ct. 1995)…………………………………………….14, 15

*Golden Eagle Ins. Co. v. Foremost Ins. Co.,*
   20 Cal. App. 4th 1372 (Cal. App. 2nd Dist. 1993)................................20, 22

*Goodridge v. KDF Auto. Group, Inc.,*
   D060269, 2012 WL 3635279 (Cal. Ct. App. Aug. 24, 2012).27, 28, 29, 40, 41

*Graham Oil Co. v. ARCO Prods. Co.,*
   43 F.3d 1244 (9th Cir.1994)……………………………………………..36

*Ingle v. Circuit City Stores, Inc.,*
   328 F. 3d 1165 (9th Cir. 2003).........................................................13, 34, 35

*In Re Pizza Time Theater Sec. Lit.,*
   112 F.R.D. 15 (N.D. Cal. 1986)................................................................16

*Kilgore v. KeyBank, Nat. Ass'n,*
   673 F.3d 947 (9th Cir. 2012)……………………………………....…..30

*Klaxon Co. v. Stentor Elec. Mfg. Co. Inc.,*
   313 U.S. 487 (S. Ct. 1941)........................................................................16

*Kruse v. Bank of America,*
   202 Cal. App. 3d 38 (Cal. App. 1st Dist. 1988)……………………..…..17

*Lifescan, Inc. v. Pernaier Diabetic Services, Inc.,*
   363 F.3d 1010 (9th Cir. 2004)..................................................................15

*Lozano v. AT & T Wireless*,
   216 F. Supp. 2d 1071 (C.D. Cal. 2002)......................................23-24, 25, 26

*Lozano v. AT & T Wireless*,
   2003 WL 25548566 (C.D. Cal. 2003).....................................................24, 25

*Marin Storage & Trucking, Inc. v. Benco Contracting and Engineering, Inc.*,
   89 Cal. App. 4th 1042 (Cal. App. 1st Dist. 2001).................................17, 20

*Neal v. State Farm Ins. Companies*,
   188 Cal. App. 2d 690 (Cal. App. 1st Dist. 1961)…………………………..18

*Nelson v. Tiffany Industries, Inc.*,
   778 F.2d 533 (9th Cir. 1985).......................................................................16

*Newton v. Am. Debt Services, Inc.*,
   2012 WL 581318 (N.D. Cal. 2012)………………………….…….36, 37, 38

*Perry v. Thomas*,
   482 U.S. 483 (S. Ct. 1987)..........................................................................15

*Porges v. RQ Construction, Inc.*,
   79 Fed. Appx. 957 (9th Cir. 2003)...........................................................9, 17

*Saika v. Gold*,
   49 Cal. App. 4th 1079 (Cal. App. 4th Dist. 1996)…………………………..31

*Sanchez v. Valencia Holding Co., LLC*,
   201 Cal. App. 4th 74 (Cal. App. 2nd Dist. 2011)…………………………..30

*Sanchez v. Valencia Holding Co., LLC*,
   272 P.3d 976 (Cal. 2012)…………………………………………….….31

*Sparks v. Vista Del Mar Child & Family Services*,
   207 Cal. App. 4th 1511 (Cal. App. 2nd Dist. 2012)…………………...29, 31

*Stern v. Cingular Wireless Corp.*,
   453 F. Supp. 2d 1138 (C.D. Cal. 2006)…………………………………40

*Stirlen v. Supercuts, Inc.*,
  51 Cal. App. 4th 1519 (Cal. App. 1st Dist. 1997)……………………………27

*Sutherland v. Ernst & Young LLP*,
  847 F. Supp. 2d 528 (S.D.N.Y. 2012)……………………………………....36

*Ticknor v. Choice of Hotels Int'l, Inc.*,
  265 F.3d 931 (9th Cir. 2001)……………………………………………13, 16

*United Steelworkers of America v. Warrior Gulf Nav. Co.*,
  363 U.S. 574 (S. Ct. 1960)……………………………………………12, 15

*Volt Information Sciences, Inc. v. Bd. Of Trustees of Leland Stanford Jr. Univ.*,
  489 U.S. 468 (S. Ct. 1989)…………………………………………….14, 16

*Washington Mutual Bank v. Superior Court*,
  24 Cal.4th 906 (Cal. S. Ct. 2001)………………………………………16

*Zinser v. Accufix Research Institute, Inc.*,
  253 F. 3d 1180 (9th Cir. 2001)…………………………………………16

## Statutes

9 U.S.C. § 2 (Federal Arbitration Act)……………………………………….2

28 U.S.C. § 1291………………………………………………………………1, 2

28 U.S.C. §1332(d)(2)………………………………………………………….1

28 U.S.C. § 1332 (d)(2)(A)…………………………………………………….1

47 U.S.C. §§ 227 et seq. (Telephone Consumer Protection Act)…………………1

47 U.S.C. §§ 227(a)(1)………………………………………………………….7

47 U.S.C. §§ 227(b)(1)(A)……………………………………………………….7

47 U.S.C. §§ 227(c)(5)…………………………………………………………..37

47 U.S.C. §§ 227(c)(5)(B)…………………………………………………....…37

Cal. Civ. Code § 1550………………………………………………………….17

Cal. Civ. Code § 1565………………………………………………………..…17

**Rules**

Fed. R. App. P. 32(a)(5)………………………………………………Page (a)

Fed. R. App. P. 32(a)(6)………………………………………………Page (a)

Fed. R. App. P. 32(a)(7)(B)(iii)………………………………………Page (a)

Fed. R. App. P. 32(a)(7)(C)………………………………………....Page (a)

Ninth Circuit Rule 28-2.6………………………………………...Page (a)

Ninth Circuit Rule 32-1…………………………………………Page (a)

# I. JURISDICTIONAL STATEMENT

## A. Basis For The District Court's Jurisdiction

The United States District Court for the Southern District of California had jurisdiction over the case pursuant to 28 U.S.C. §1332(d)(2) and 28 U.S.C. § 1332 (d)(2)(A). Appellant Erik Knutson seeks for himself and for each Class member up to $1,500 in damages for each call in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq., which when aggregated among a proposed class numbered in the tens of thousands, exceeds the $5,000,000 threshold for Federal Court jurisdiction. Furthermore, Appellant Erik Knutson alleges a national class, which will result in at least one class member belonging to a different state than that of Appellee Sirius XM Radio Inc. Therefore, both elements of diversity jurisdiction under the Class Action Fairness Act of 2005 ("CAFA") were present.

## B. Basis For The Court Of Appeals' Jurisdiction

The United States Court of Appeals for the Ninth Circuit has jurisdiction pursuant to 28 U.S.C. § 1291.

## C. Filing Date of The Appeal

The District Court filed the Order that is the subject of this appeal on May 30, 2012. [Docket No. 13; Excerpts of Record 105:18-115:16 ("E.R.").] Appellant Erik Knutson filed a timely Notice of Appeal sixteen days later, on June 15, 2012. [Docket No. 15; E.R. 117-118:3.]

### D. Assertion That Appeal Is From a Final Order Or Judgment That Disposes Of All Parties' Claims Or Information Establishing The Court of Appeals' Jurisdiction On Some Other Basis

This appeal is from a final order granting a motion to compel arbitration and dismissing the case, and appealable pursuant to the "final judgment rule." *See* 28 U.S.C. § 1291.

## II. STATEMENT OF ISSUES PRESENTED FOR REVIEW

1. Did the District Court err when it found that there was an enforceable Arbitration Agreement entered into between the parties?

2. Did the District Court err when it determined that both parties to the Customer Agreement did give their mutual assent to enter into the Customer Agreement?

3. Did the District Court err when it determined that the Customer Agreement was not an unenforceable adhesion contract?

## III. STATEMENT OF THE CASE

On February 15, 2012, Erik Knutson ("Knutson" and/or "Appellant") brought a class action suit against Sirius XM Radio Inc. ("Sirius" and/or "Appellee"), alleging Sirius negligently and willfully violated the Telephone

Consumer Protection Act, 47 U.S.C. §227 et seq. ("TCPA"). *Compl.* ¶ 1 [Docket No. 1; E.R. 006, ¶ 1.]

On April 23, 2012, Sirius filed a Notice of Motion and Motion to Compel Arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1, et seq. [Docket No. 6; E.R. 017-026.] On May 7, 2012, Knutson timely filed an Opposition to Sirius' Motion to Compel Arbitration. [Docket No. 11; E.R. 039-069.]

On May 30, 2012, the District Court granted Sirius' Motion to Compel Arbitration and dismissed Knutson's claim entirely. [Docket No. 13; E.R. 105-115.] On June 15, 2012 Knutson filed a timely Notice of Appeal. [Docket No. 15; E.R. 117-119.]

## IV. STATEMENT OF FACTS
### A. Background

In November 2011, Knutson purchased a Toyota Tacoma truck, which for marketing purposes, included a free 90-day trial subscription to Sirius' satellite radio services. *Compl.*¶ 9 [Docket No. 1; E.R. 007, ¶4]; *Knutson Decl. in Support of Oppo. to Mtn. to Compel,* ¶ 4 [Docket No. 11; E.R. 071, ¶ 4]; *Ruhland Decl. in Support of Mtn. to Compel,* ¶ 13 [Docket No. 6; E.R. 029, ¶ 13.] Knutson's satellite receiver was activated on November 7, 2011. *Ruhland Decl. in Support of Mtn. to Compel,* ¶ 7 [Docket No. 6; E.R. 029, ¶ 7.] Knutson did not receive any documentation from Sirius at the time of the activation of his receiver. *Knutson*

*Decl. in Support of Oppo. to Mtn. to Compel,* ¶ 5 [Docket No. 11; E.R. 071, ¶ 5.]
Furthermore, Sirius did not mail out their "Welcome Kit" to Knutson, which
included the "Customer Agreement," until November 29, 2011. *Ruhland Decl. in
Support of Mtn. to Compel,* ¶ 10 [Docket No. 6; E.R. 029, ¶ 10.]  Therefore, the
earliest date that Knutson could have actually received the Welcome Kit was
December 12, 2011; over one month after the activation of Knutson's satellite
receiver. *Id.*

The ten page Customer Agreement which was provided to Knutson in
December 2011, included, among many other terms, an arbitration provision
providing that any dispute may be resolved by binding arbitration, as well as a
provision precluding the pursuit of claims on a class action basis. *Ruhland Decl. in
Support of Mtn. to Compel*, Exhibit A, p. 6 [Docket No. 6; E.R. 032.]  The
arbitration provision contained in the Customer Agreement provides that either
party wishing to bring a claim against the other must wait 60 days after initiating
an informal resolution before turning to formal resolution. *Id.*  If a claim is not
informally resolved, the party wishing to bring a claim must initiate arbitration
with the American Arbitration Association ("AAA") and must follow the rules of
the AAA. *Id.*  However, the Customer Agreement, when finally provided to
Knutson, was not accompanied by a copy of the rules and procedures of the AAA.

The Customer Agreement goes on to state, in all capital letters:

> IF YOU DO NOT CANCEL YOUR SUBSCRIPTION
> WITHIN *3 BUSINESS DAYS* OF ACTIVATION OF
> YOUR RECIEVER, IT WILL MEAN THAT YOU
> AGREE TO THIS AGREEMENT WHICH WILL BE
> LEGALLY BINDING ON YOU.

*Id.* (emphasis added).

Pursuant to the terms of the Customer Agreement, the last day for Knutson to reject the terms of the Customer Agreement was on November 10, 2012; three business days after the activation of Knutson's satellite receiver. Sirius never provided Knutson with the opportunity to accept or reject the terms of the Customer Agreement because Sirius seriously delayed in providing Knutson with the Customer Agreement, which Customer Agreement Knutson did not receive until over 30 days after Knutson's receiver was activated. *Ruhland Decl. in Support of Mtn. to Compel,* ¶ 10 [Docket No. 6; E.R. 029, ¶10]; *Knutson Decl. in Support of Oppo. to Mtn. to Compel,* ¶ 6 [Docket No. 11; E.R. 072, ¶ 6.] Despite being the party who drafted the Customer Agreement, and therefore knowing of the three business day time limitation contained therein, Sirius chose not to inform Knutson of the existence of the Customer Agreement prior to or at the time of the activation of Knutson's receiver. Furthermore, Sirius chose not to provide the Customer Agreement to Knutson until over 30 days after the brief time period Knutson was given to accept or reject the Customer Agreement had expired. *Decl. of Knutson in Support of Oppo. to Mtn. to Compel,* ¶¶ 6-9 [Docket No. 11; E.R.

072-073, ¶¶ 6-9.]  If the Court accepts the reasoning advanced by Sirius and the District Court, it then follows that on November 10, 2011, the Customer Agreement became legally binding on Knutson, without Knutson's knowledge that the Customer Agreement even existed. *Ruhland Decl. in Support of Mtn. to Compel*, Exhibit A, p. 6 [Docket No. 6; E.R. 032]; *Knutson Decl. in Support of Opp. to Mtn. to Compel,* ¶¶ 4-6 [Docket No. 11; E.R. 071-072.]  To be clear, this is exactly what the District Court held.  *District Court's Order*, p. 6:18-20 [Docket No. 13; E.R. 110:18-20.]

Once Knutson was finally provided with the Customer Agreement, any time taken by Knutson to read and familiarize himself with the Customer Agreement would have unfortunately be in vain, given the provision inserted by Sirius granting Sirius and Sirius alone the sole power to unilaterally change any term of the Customer Agreement without providing any meaningful notice to the other party to the agreement.   Section "B. 1." of The Customer Agreement labeled "Changes to Terms" states:

> ***WE RESERVE THE RIGHT TO CHANGE THE TERMS OF THIS AGREEMENT AT ANY TIME***.
> ANY CHANGES WILL BE EFFECTIVE UPON
> POSTING OF THE REVISIONS ON THE SITE
> REFLECTING THE NEW EFFECTIVE DATE.
> YOUR CONTINUED USE OF THE SERVICE
> FOLLOWING THE POSTING OF THE CHANGES
> ONLINE WILL CONSTITUTE YOUR ACCEPTANCE
> OF SUCH CHANGES.  YOU SHOULD
> FREQUENTLY REVIEW THE AGREEMENT

(INCLUDING THE EFFECTIVE DATE) AND
APPLICABLE POLICIES FROM TIME TO TIME TO
UNDERSTAND THE TERMS THAT APPLY TO
YOUR USE OF THE SERVICE…

*Ruhland Decl. in Support of Mtn. to Compel*, Exhibit A, p. 6 (emphasis added);

[Docket No. 6; E.R. 032, Section "B. 1.".]

Through this provision of the Customer Agreement, Sirius has granted itself the unilateral power to re-write the entire Customer Agreement as Sirius' pleasure, without even notifying the other party to the Customer Agreement. This provision, taken together with Sirius' failure to provide Knutson with the Customer Agreement until after the time period allotted for him to reject the terms of the agreement had expired, establish a disheartening theme with respect to the Customer Agreement; that of binding consumers to a Customer Agreement whose terms are completely dictated by Sirius, without providing the consumers with any notice of said terms.

In January 2012, Knutson received on his cellular telephone, three unauthorized telephone calls from Sirius via an "automatic telephone dialing system" ("ATDS") as defined by 47 U.S.C. § 227(a)(1), which used an "artificial or prerecorded voice" as prohibited by 47 U.S.C. § 227 (b)(1)(A). *Compl.,* ¶¶ 14-19 [Docket No. 1; E.R. 008, ¶¶ 14-19.] At no time did Knutson provide Sirius with Knutson's cellular telephone number or authorize Sirius to contact Knutson on Knutson's cellular telephone. *Compl.,* ¶¶ 10-12 [Docket No. 1; E.R. 007-008, ¶¶

10-12.] Thus, these telemarketing calls, often referred to as SPAM, were unauthorized and unsolicited by Knutson. Further, all of the aforementioned telephone calls were sent by Sirius to Knutson during Knutson's free 90-day trial subscription with Sirius, which ended February 7, 2012. *Ruhland Decl. in Support of Mtn. to Compel,* ¶ 7 [Docket No. 6; E.R. 029, ¶ 7.]

## B. Sirius' Motion To Compel Arbitration

On April 23, 2012, Sirius filed a Motion to Compel Arbitration. The argument advanced in Sirius' Motion to Compel Arbitration ultimately boiled down to the position that, by virtue of the fact that Knutson did not notify Sirius that he did not accept the terms of the Customer Agreement, 27 days before he ever received it, Knutson was deemed to have accepted the terms of the Customer Agreement and therefore, any of Knutson's claims against Sirius must be arbitrated on an individual basis according to the Customer Agreement.

On May 7, 2012, Knutson filed an Opposition to Sirius' Motion to Compel Arbitration in which Knutson argued that as a result of Sirius providing Knutson with the Customer Agreement over one month after the expiration of the allotted time frame for Knutson to reject the terms of the Customer Agreement, the Customer Agreement could not be binding on Knutson because there was no assent from Knutson to the Customer Agreement. *Pls.' Opp.*, pp. 5-15 [Docket No. 11; E.R. 050-059.] Knutson's Opposition to Sirius' Motion to Compel also argued that

the Customer Agreement should not be enforced because it is an unconscionable adhesion contract. *Pls.' Opp.*, pp. 23:20-25:13 [Docket No. 11; E.R. 067:20-069:13.]

### C. District Court's Ruling on Sirius' Motion To Compel Arbitration

On May 30, 2012, the District Court granted Sirius' Motion to Compel Arbitration and dismissed Knutson's claims against Sirius. *District Court's Order,* p. 11:14-16 [Docket No. 13; E.R. 115:14-16.] The District Court found Knutson was bound by the Customer Agreement, including its arbitration clause, because Knutson continued to use his 90-day trial subscription after he received the Customer Agreement. *Id.* at pp. 4:9-6:20 [Docket No. 13; E.R. 108:9-110:20.] Moreover, the District Court found the Customer Agreement was not an unconscionable adhesion contract, for the Customer Agreement was only procedurally unconscionable, but not substantively unconscionable. *Id.* at pp. 8:14-11:12 [Docket No. 13; E.R. 112:14-115:12.]

### V. SUMMARY OF THE ARGUMENT

The District Court erred in finding there was a valid and enforceable arbitration agreement between the parties because Knutson never had the opportunity to assent to Sirius' Customer Agreement at the point the Customer Agreement allegedly become binding upon Knutson. In California, mutual assent is an essential requirement to the formation of any contract. *Porges v. RQ*

*Construction, Inc.*, 79 Fed. Appx. 957, 958 (9th Cir. 2003). Here, Knutson received the Customer Agreement over 30 days after Knutson's satellite receiver was activated. *Ruhland Decl.in Support of Mtn. to Compel,* ¶ 10 [Docket No. 6; E.R. 029, ¶ 10]; *Knutson Decl. in Support of Opp. to Mtn. to Compel,* ¶ 6 [Docket No. 11; E.R. 072, ¶ 6]. This was 27 days after Knutson might have been able to cancel activation. According to the Customer Agreement:

> IF YOU DO NOT CANCEL YOUR SUBSCRIPTION
> WITHIN *3 BUSINESS DAYS* OF ACTIVATION OF
> YOUR RECIEVER, IT WILL MEAN THAT YOU
> AGREE TO THIS AGREEMENT WHICH WILL BE
> LEGALLY BINDING ON YOU.

*Ruhland Decl. in Support of Mtn. to Compel*, Exhibit A, p. 6 (emphasis added) [Docket No. 6; E.R. 032.]

Therefore, Knutson was never afforded the opportunity to reject the Customer Agreement (*Ruhland Decl. in Support of Mtn. to Compel*, Exhibit A, p. 6 [Docket No. 6; E.R. 032]; *Knutson Decl. in Support of Opp. to Mtn. to Compel,* ¶¶ 4-6 [Docket No. 11; E.R. 071-071, ¶¶ 4-6]); however, the District Court held that the Customer Agreement became legally binding on Knutson on November 10, 2011, without Knutson's knowledge that the Customer Agreement even existed. *District Court's Order*, p. 4:23-25 [Docket No. 13; E.R. 109:23-25.]

Contrary to the District Court's understanding of Knutson's argument, Knutson is not advancing the position that Sirius be forced to negotiate its

Customer Agreement on an individual basis prior to any services being activated. *District Court's Order*, p. 6:6-8 [Docket No. 13; E.R. 110:6-8.] Rather, Knutson is simply arguing that if Sirius' Customer Agreement is going to proscribe a limited time frame within which a consumer is able to reject the terms of the Customer Agreement, Sirius should provide the Customer Agreement to the consumer prior to the expiration of the time frame. As another alternative, Sirius could have given consumers, like Knutson, an adequate amount of time to reject the Customer Agreement by simply increasing the number of business days from three days or by stating that the consumer should contact Sirius immediately after receiving the Customer Agreement if they do not agree to its terms. Simply providing the Customer Agreement to consumers prior to the expiration of the date by which consumers must notify Sirius of their rejection of the Customer Agreement, or simply changing one sentence of the Customer Agreement, would not cause Sirius to incur any additional costs. Rather, it would actually benefit Sirius in the long-run by helping to avoid further litigation regarding the issue of whether there was mutual assent in the execution of the Customer Agreement.

The District Court also erred in failing to find that the Customer Agreement was substantively unconscionable. Section "B. 1." of The Customer Agreement labeled "Changes to Terms" states:

> ***WE RESERVE THE RIGHT TO CHANGE THE TERMS OF THIS AGREEMENT AT ANY TIME***.

ANY CHANGES WILL BE EFFECTIVE UPON
POSTING OF THE REVISIONS ON THE SITE
REFLECTING THE NEW EFFECTIVE DATE.
YOUR CONTINUED USE OF THE SERVICE
FOLLOWING THE POSTING OF THE CHANGES
ONLINE WILL CONSTITUTE YOUR ACCEPTANCE
OF SUCH CHANGES. YOU SHOULD FREQUENTLY
REVIEW THE AGREEMENT (INCLUDING THE
EFFECTIVE DATE) AND APPLICABLE POLICIES
FROM TIME TO TIME TO UNDERSTAND THE
TERMS THAT APPLY TO YOUR USE OF THE
SERVICE AND/OR USE OF THE SITE.

*Ruhland Decl. in Support of Mtn. to Compel*, Exhibit A, p. 6 (emphasis added)

[Docket 6; E.R. 032, Section "B. 1.".] The *notice* provision is flawed because

posting changes on Sirius' website does not provide notice to consumers who do

not have access to the internet. It also does not provide notice to consumers who

are not proficient in the English language.

"'Substantive unconscionability' focuses on the terms of the agreement and

whether those terms are 'so one-sided as to 'shock the conscience.''" *Kinney v.*

*United HealthCare Services, Inc.*, 70 Cal. App. 4th 1322, 1330-1331 (1999), citing

*American Software, Inc. v. Ali*, 46 Cal. App. 4th 1386, 1391 (1996). The Customer

Agreement, which grants Sirius the sole right to make any change, at any time, to

any term of the Customer Agreement, without providing the consumer with any

notice whatsoever, coupled with the fact that the consumer will be found to have

accepted any such changes simply by continuing to use the service, in addition to

several other terms that are ostensibly bilateral yet their practical effect is to favor

the drafter, must surely fall within the scope of substantive unconscionability because of its completely one-sided terms in favor of Sirius.

Thus, no arbitration agreement was formed between the parties, for Knutson was never given the opportunity to reject or accept the terms of the Customer Agreement, and the Customer Agreement is an unconscionable adhesion contract.

## VI. ARGUMENT

### A. Standard of Review

"The district court's decision to grant or deny a motion to compel arbitration is reviewed de novo." *Bushley v. Credit Suisse First Boston*, 360 F.3d 1149, 1152 (9th Cir. 2004), citing *Circuit City Stores, Inc. v. Adams,* 279 F.3d 889, 892 n. 2 (9th Cir.2002) (decision granting motion to compel arbitration is reviewed de novo); *Ingle v. Circuit City Stores, Inc.,* 328 F.3d 1165, 1169 (9th Cir. 2003) (decision denying motion to compel arbitration is reviewed de novo). The underlying factual findings are reviewed for clear error. *Ticknor v. Choice Hotels Intern., Inc.,* 265 F.3d 931, 936 (9th Cir. 2001).

### B. Knutson Cannot Be Held To The Terms of The Arbitration Clause Contained Within The Customer Agreement Absent A Showing That The Parties Thereto Entered Into The Customer Agreement In Accordance With California's Laws on Contract Formation

The liberal federal policy favoring arbitration agreements cannot overshadow the fact that in order for an arbitration agreement to be enforceable, it must be able to withstand basic state law contract defenses. "[A]rbitration is

simply a matter of contract between the parties; it is a way to resolve those disputes-but only those disputes-that the parties have agreed to submit to arbitration." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (S. Ct. 1995). Under 9 U.S.C. § 2, the Federal Arbitration Act ("FAA"):

> A written provision in…a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, ***save upon grounds as exist at law or in equity for the revocation of any contract***.

9 U.S.C. § 2, FAA (emphasis added).

"The [FAA] places arbitration agreements 'on the same footing as other contracts.'" *Lifescan, Inc. v. Premier Diabetic Servs., Inc.* 363 F.3d 1010, 1012 (9th Cir. 2004), citing *Volt Information Sciences, Inc. v. Bd. Of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 474 (S. Ct. 1989). "By its terms, the Act [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates the district courts *shall* direct the parties to proceed to arbitration ***on issues as to which an arbitration agreement has been signed***." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (S. Ct. 1985), *citing* FAA §§ 3, 4 (emphasis added). "Thus, insofar as the language of the Act [FAA] guides our disposition of this case, we conclude that agreements to arbitrate must be enforced,

*absent a ground for revocation of the contractual agreement*." *Id.* (emphasis added). In determining whether to compel arbitration under the FAA, the court's role is limited to determining whether: (1) there is a *valid and enforceable agreement between the parties* to arbitrate; and (2) the claims at issue fall within the scope of the agreement. *Lifescan, Inc. v. Premier Diabetic Services, Inc.,* 363 F.3d 1010, 1012 (9th Cir. 2004) (emphasis added).

The United States Supreme Court has held that "arbitration is a matter of contract and a party *cannot be required to submit to arbitration any dispute which he has not agreed so to submit*." *United Steelworkers of America v. Warrior & Gulf Nav. Co*., 363 U.S. 574, 582, (S. Ct. 1960) (emphasis added); *see also*, *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 943 (S. Ct. 1960) ("arbitration is simply a matter of contract between the parties"). Moreover, "*state law*, whether of legislative or judicial origin, *is applicable* if that law arose to govern issues concerning the validity, revocability, and enforceability of *contracts generally*." *Perry v. Thomas*, 482 U.S. 483, 492 (S. Ct. 1987) (emphasis added). "Thus, generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2 [of the FAA]. *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687 (S.Ct. 1996).

Therefore, this Court must review issues surrounding the Customer Agreement's formation and any defenses thereto, according to the principles of

California law, for Knutson resides in California, California is the forum state, and it is where the Customer Agreement was *allegedly* entered into between the parties.[1] *Compl.* ¶¶ 3-4 [Docket No. 1; E.R. 006-005, ¶¶ 3-4.)

## C. The District Court Erred In Finding The Existence Of A Binding Arbitration Agreement Given That There Was No Assent By Knutson To Enter Into The Customer Agreement

A valid contract requires mutual assent, which was absent from the Customer Agreement because Knutson was not given an opportunity to accept or reject the Customer Agreement; and it is not an unrealistic economic burden for Sirius to change the Customer Agreement in a manner that would provide consumers like Knutson an opportunity to reject the Customer Agreement.

### 1. <u>Mutual Assent Is Required To Form Any Contract In California</u>

The Supreme Court has "emphasized that 'arbitration under the Act [FAA] is a matter of consent.'" *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1755

---

[1] A federal court sitting in diversity must look to the law of the forum state to determine what law applies. *Klaxon Co. v. Stentor Elec. Mfg. Co. Inc.,* 313 U.S. 487, 496, 61 S.Ct. 1020 (1941); *Ticknor v. Choice Hotels International, Inc.,* (9th Cir. 2001) 265 F.3d 931, 936-937. The court in *In Re Pizza Time Theater Sec. Lit.,* 112 F.R.D. 15, 19 (N.D. Cal. 1986) stated, "'California will decline to apply its own law to a case brought in California only if it is shown that another state has a greater interest in having its own law applied' [quoting from] *Nelson v. Tiffany Industries, Inc*., 778 F.2d 533, 534 (9th Cir. 1985)." That analysis was also confirmed in *Washington Mutual Bank v. Superior Court,* 24 Cal.4th 906 (2001). In addition, the party attempting to impose a law other than that of the forum state, *bears the burden of proof* that the other state's law applies. *Zinser v. Accufix Research Institute, Inc.,* 253 F. 3d 1180, 1187 (9th Cir. 2001).

n.* (S.Ct. 2011) (Thomas, J., concurring), citing *Volt Information Sciences, Inc. v. Bd. Of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 479 (S. Ct. 1989). "Every contract requires mutual assent or consent (Civ. Code, §§ 1550, 1565)…" *Marin Storage & Trucking, Inc. v. Benco Contracting and Engineering, Inc.*, 89 Cal. App. 4th 1042, 1049 (2001); *see also, Kruse v. Bank of America,* 202 Cal. App. 3d 38, 59 (1988) (It is a basic tenet of contract law that creation of a valid contract requires mutual assent). Under California law, "[t]he formation of a binding contract requires: (1) parties capable of contracting; (2) ***mutual assent***; (3) a lawful object; and (4) sufficient consideration." *Porges*, 79 Fed. Appx. at 958 (emphasis added). Without mutual assent to the terms of a contract or agreement, no contract or agreement formed. *See Marin Storage*, 89 Cal. App. 4th at 1049 ("Because mutual assent is essential to the existence of a contract (Civ. Code, §§ 1550, 1565), the court's finding that there was no mutual assent to the terms of the … Contract was a finding that no contract had been formed").

## 2. There Was No Mutual Assent to Enter Into the Customer Agreement As Knutson Was Never Given The Opportunity To Accept Or Reject The Customer Agreement

Knutson's satellite receiver was activated on November 7, 2011, for a 90-day trial ending February 7, 2012. *Ruhland Decl. in Support of Mtn. to Compel*, ¶ 7 [Docket No. 6; E.R. 029, ¶ 7.] Knutson was not provided with the Customer Agreement at the time of the activation of this service. *Knutson Decl. in Support of*

*Oppo. to Mtn. to Compel,* ¶ 6 [Docket No. 11; E.R. 072, ¶ 6.]   Sirius itself acknowledges that Sirius did not provide Knutson with the Customer Agreement, which contains the Arbitration Provision in dispute, until November 29, 2011, when Sirius *mailed* Knutson a "Welcome Kit" that included, among other things, the Customer Agreement. *Ruhland Decl. in Support of Mtn. to Compel,* ¶ 10 [Docket No. 6; E.R. 029, ¶ 10.]

The "Welcome Kit" was last scanned for delivery by the USPS on Saturday December 10, 2011, and had an estimated delivery day of Monday December 12, 2011, or Tuesday December 13, 2011. *Id.*   Thus, Sirius cannot deny that Knutson did not receive the Customer Agreement until either December 12, 2011, or December 13, 2011; *over one month after Knutson's account with Sirius had been activated.*   The extreme delay by Sirius in providing the Customer Agreement to Knutson is of great import, given the following provision included in the Customer Agreement that provides a very limited window of time for Knutson to reject the terms of the Customer Agreement.  The Customer Agreement states:

> IF YOU DO NOT CANCEL YOUR SUBSCRIPTION WITHIN *3 BUSINESS DAYS* OF ACTIVATION OF YOUR RECEIVER, IT WILL MEAN THAT YOU AGREE TO THIS AGREEMENT WHICH WILL BE LEGALLY BINDING ON YOU.

*Ruhland Decl. in Support of Mtn. to Compel*, Exhibit A, p. 6 (emphasis added)

[Docket No. 6; E.R. 032.]

The Customer Agreement, drafted by Sirius, clearly dictates that Knutson's only opportunity to reject the terms of the Customer Agreement was by cancelling Knutson's subscription within *three business days of the activation of Knutson's receiver*. This means that by the very terms of the Customer Agreement drafted by Sirius, the last day on which Knutson was able to accept or reject the terms of the Customer Agreement was *November 10, 2011*. Despite being aware of this deadline, Sirius chose to wait until nearly one month after the expiration of this deadline to provide Knutson with the Customer Agreement. By doing so, Sirius knowingly deprived Knutson of the opportunity to accept or reject the terms of the Customer Agreement.

The District Court's ruling on Sirius' Motion to Compel Arbitration ultimately holds that on November 10, 2011, the Customer Agreement became legally binding on Knutson, without Knutson's knowledge that the Customer Agreement even existed. *District Court's Order*, pp. 4:9-6:20 [Docket 13; E.R. 108:9-110:20.) This was error.

   a. *Knutson did not assent to the Customer Agreement, given that the Customer Agreement was not called to Knutson's attention until after the timeframe provided by Sirius to reject the Customer Agreement had expired*

Knutson was never provided with an opportunity to assent to the terms of the Customer Agreement, for Knutson was allegedly bound to the Customer Agreement before Knutson even knew of its existence. The District Court's Order

cites to *Marin Storage* for the proposition that an exception exists to the general rule that a party cannot avoid the terms of a contract on the ground that he failed to read it before signing it "when the writing does not appear to be a contract and the terms are not called to the attention of the recipient. In such a case, no contract is formed with respect to the undisclosed terms." *Marin Storage*, 89 Cal. App. 4th at 1049-1050. *District Court's Order*, pp. 4:12-17 [Docket No. 13; E.R. 108:12-17.]

The court in *Corey v. Golden state Bank,* 95 Cal. App. 3d 360, 367 (1979) also addressed this rule when it came to the holding that customers of a bank did not consent to the terms of the bank's money orders containing a service charge provision when the service charge provision was *effectively hidden from the view of money order purchasers until after the transactions were complete*, the size of the print setting forth the service charge provision was small, and the bank's agents did not as a rule call the provision to the customer's attention. *Id.* This rule, which precludes the enforcement of a contractual provision that was not called to the attention of a party to the contract, serves to reinforce the importance of the presence of mutual assent in the formation of a contract.

In holding that the arbitration clause was not unfairly hidden in the Customer Agreement to warrant the invocation of the rule laid out by the court in *Marin Storage*, the District Court failed to recognize that the *Customer Agreement itself* was not "called to the attention of the recipient" because the Customer Agreement

was not even provided to Knutson until after the proscribed period for him to reject it had expired. *District Court's Order*, pp. 4:9-6:20 [Docket No. 13; E.R. 108:9-110:20.]

In *Newton v. Am. Debt Services, Inc.*, 2012 WL 581318, *5 (N.D. Cal. 2012), the court held that there was no agreement to arbitrate because the defendant did not provide evidence that the terms of the arbitration agreement were present at the time the plaintiff signed a consumer application, even though that application made reference to an arbitration agreement.

Similarly, Sirius does not dispute that it failed to provide Knutson with the "Welcome Kit" containing the terms of the arbitration agreement until well after Knuston was permitted to use Sirius' service, and after the three date permitted to terminate the agreement has passed. *Ruhland Decl. in Support of Mtn. to Compel*, ¶ 10 [Docket No. 6; E.R. 029, ¶ 10.] Moreover, Knutson was not even informed at the time he purchased the vehicle that there was an agreement with Sirius, let alone an arbitration agreement regarding use of the product. *Knutson Decl. in Support of Oppo. to Mtn. to Compel*, ¶ 6 [Docket No. 11; E.R. 072, ¶ 6.] Therefore, as in *Newton*, the Court should find that there was no actual agreement to arbitrate, including at the time of Sirius' alleged violations of the TCPA. Thus, it follows that if a party cannot be held to terms of a contract that are not clearly disclosed to

him, he surely cannot be held to the terms of a contract when *the contract itself* is not even provided to him.

> b. *Knutson's continued use of Sirius' services does not constitute assent to the terms of the Customer Agreement, given that by the time the Customer Agreement was finally provided to Knutson, the timeframe provided by Sirius to reject the Customer Agreement had expired*

The District Court erred in holding that "Plaintiff's consent to be bound by the Customer Agreement was implied by his decision to continue his 90-day trial subscription." *District Court's Order*, p. 6:18-20 [Docket No. 13; E.R. 110:18-20.] "'As a general rule, silence or inaction does not constitute acceptance of an offer.'" *Circuit City Stores, Inc. v. Najd*, 294 F. 3d 1104, 1109 (9th Cir. 2002) citing *Golden Eagle Ins. Co. v. Foremost Ins. Co.*, 20 Cal. App. 4th 1372 (1993). "However, 'where circumstances or the previous course of dealing between the parties places the offeree under a duty to act or be bound, his silence or inactivity will constitute his assent.'" *Id.* citing *Beatty Safway Scaffold, Inc. v. Skrable*, 180 Cal. App. 2d 650 (1960). Here, Knutson had no prior dealings with Sirius. *Knutson Decl. in Support of Oppo. to Mtn. to Compel,* ¶ 4 [Docket 11; E.R. 071, ¶ 4.]

Furthermore, due to Sirius' failure to provide Knutson with the Customer Agreement in a timely manner, Knutson did not even know that he had a duty to act or be bound until after the Customer Agreement had already allegedly become binding on him. *Knutson Decl. in Support of Oppo. to Mtn. to Compel,* ¶ 5

[Docket 11; E.R. 071, ¶ 5.]  According to the terms of the Customer Agreement, by the time Plaintiff was made aware of the Customer Agreement, objecting to the terms of the Customer Agreement in order to not be bound by it was not an option for Plaintiff.  *Knutson Decl. in Support of Oppo. to Mtn. to Compel,* ¶¶ 6-10 [Docket 11; E.R. 072-073, ¶¶ 6-9.]  Therefore, Knutson's silence cannot constitute his assent to the Customer Agreement.

The District Court's ruling goes against California's well established law on the formation of contracts, as it essentially abrogates the necessity of mutual consent.  By upholding the District Court's ruling, this Court will be giving the green light to Sirius and other similar companies who regularly employ adhesion contracts in their day-to-day business with consumers to bind their consumers to their adhesion contracts prior to even providing notice of the existence of such contracts.  Based on the foregoing, the District Court erred in finding that an Arbitration Agreement exists between Knutson and Sirius, for Knutson was never given the opportunity to reject the Customer Agreement's terms.

### 3. It Would Not Be Unrealistic Or An Economic Burden For Sirius To Change The Terms Of Its Customer Agreement, So That The Consumer Had Time To Reject The Customer Agreement

The great weight placed by the District Court in its Order on *Bischoff v. Direct TV, Inc.*, 180 F. Supp. 2d 1097 (C.D. Cal. 2002) and *Lozano v. AT & T Wireless*, 216 F. Supp. 2d 1071 (C.D. Cal. 2002) *vacated*, CV02-

00090WJRAJWX, 2003 WL 25548566 (C.D. Cal. Aug. 18, 2003) is misplaced, especially since the *Lozano* Order was vacated and should never have been considered by the District Court. *District Court's Order*, pp. 5:20-6:8 [Docket No. 13; E.R. 109:20-100:8.] Further, the District Court downplays the importance of the fact that the contracts in *Bischoff* and *Lozano* actually allowed for consumers to reject the terms of the contracts and rather, focuses on the discussion of "the economic and practical considerations involved in services to mass consumers", which make it "unrealistic" to expect the negotiation of all terms of a customer contract before initiating service. *Id.*, citing *Bischoff*, 180 F. Supp. 2d at 1105.

In relying on these propositions found in *Bischoff* and *Lozano*, the District Court failed to recognize the true issue that is at hand: whether a party can be found to have entered into a contract when the contract's terms, coupled with the manner of the delivery of the contract, preclude the other party to the contract from any opportunity to assent to the contract's terms. Knutson has not, and is not presently arguing that a finding of mutual assent is predicated on the Customer Agreement having been provided to Knutson prior to Knutson's receiver being activated or Sirius negotiating the terms of the Customer Agreement with Knutson on an individual basis. Rather, Knutson is simply arguing that Sirius should have provided Knutson with an opportunity to accept or reject the Customer Agreement. It would not be "unrealistic" or expensive (*id.*) for Sirius to simply change the

language of its Customer Agreement so that it provides the consumer with a larger time frame to accept or reject the Customer Agreement, or to simply provide the Customer Agreement to the consumer prior to the allotted time frame for rejecting the Customer Agreement had expired.

One cannot accept the holdings reached in *Bischoff* and *Lozano* without first recognizing that the contracts that were the subject of those cases provided an opportunity for the consumer to reject the contract if they did not wish to be bound by its terms. In *Bischoff*, DirectTV used the following language in their Customer Agreement: "If you do not accept these terms, please notify us ***immediately*** and we will cancel your service." *Bischoff*, 180 F. Supp. 2d at 1101 (emphasis added). The court in *Lozano* recognized that by virtue of the customer agreement being located inside of the box of the purchased phone, the customer had the option of immediately cancelling the contract or canceling the contract within 30 days of activation if the terms and conditions were not agreeable to them. *Lozano*, 216 F. Supp. 2d at 1073, 1075, *vacated*, CV02-00090WJRAJWX, 2003 WL 25548566 (C.D. Cal. Aug. 18, 2003). Thus, there is no getting around the fact that regardless of whether the contracts in *Bischoff* and *Lozano* were provided to the consumers prior to the initiation of services, the contracts in each case were provided to the consumers prior to the expiration of the time period prescribed in each contract for the rejection of the contracts. This key fact, which the District Court glossed over

in its Order, is not present in the case at bar. Unlike the consumers in *Bischoff* and *Lozano*, due to the terms of the Customer Agreement and the timeframe in which the Customer Agreement was provided to Knutson, Knutson had waived his right to reject the Customer Agreement by the time he received it.

Contrary to the District Court's concern regarding the impracticability and expense involved with the negotiation of mass consumer service contracts (*District Court's Order*, p. 6:6-8 [Docket No. 13; E.R. 110:6-8]), the issue of lack of assent could have been remedied by Sirius extending the three business day timeframe to reject the Customer Agreement, replacing the three business day timeframe with an instruction that the consumer contact Sirius immediately after their receipt of the Customer Agreement if they desired to reject its terms, or simply providing the Customer Agreement to the consumer prior to the allotted timeframe for rejection expired. Any of these simple alternatives would provide consumers with the necessary right to reject the Customer Agreement if they so desired, and would ensure that the legal issue of whether consumers assented to the Customer Agreement would not be raised in litigation. Knutson has been unable to locate any case law stating that it is impractical or an economic hardship for a company like Sirius, which sells services to mass consumers, to include a term in its own adhesion contract that provides a consumer with an opportunity to either accept or reject the contract.

Had Sirius, the master of the Customer Agreement, adopted one of the simple and cost-effective alternatives proposed above, there would be no issue as to whether Knutson assented to the Customer Agreement. Thus, the District Court erred in placing such great emphasis on the expense and impracticability associated with the negotiation of mass consumer service contracts rather than on the fact that ultimately, the consumer must be provided with an opportunity to accept or reject a contract that they are presented with.

## D. The District Court Erred in Failing to Find The Customer Agreement Unenforceable On The Ground of Unconscionability

"Unconscionability generally includes an absence of meaningful choice by one party together with contract terms that are unreasonably favorable to the other party." *Goodridge v. KDF Auto. Group, Inc.*, D060269, 2012 WL 3635279, *6 (Cal. Ct. App. Aug. 24, 2012). "The prevailing view is that [procedural and substantive unconscionability] must both be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability." *Stirlen v. Supercuts, Inc.*, 51 Cal. App. 4th 1519, 1533 (1997). However, procedural and substantive unconscionability need not be present in the same degree; the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to reach the conclusion that the term is unenforceable, and vice versa. *Armendariz v. Foundation Health Psychcare*

*Services, Inc.*, 24 Cal. 4th 83, 114 (2000). "Unconscionability analysis begins with an inquiry into whether the contract is one of adhesion." *Id.* at 113.

### 1. The District Court Properly Held That The Customer Agreement Was Procedurally Unconscionable

"Like substantive unconscionability, procedural unconscionability is a defense to contract formation, and so state law applies." *Coneff v. AT & T Corp.*, 673 F.3d 1155, 1161 (9th Cir. 2012). "Where the parties to a contract have unequal bargaining power and the contract is not the result of real negotiation or meaningful choice, it is oppressive." *Goodridge v. KDF Auto. Group, Inc.*, D060269, 2012 WL 3635279, *6 (Cal. Ct. App. Aug. 24, 2012). The District Court properly held that the Customer Agreement was procedurally unconscionable on the ground that although Sirius stated that the party initiating arbitration must follow the rules and procedures of the AAA, Sirius failed to provide Knutson with a copy of the rules of the AAA. *District Court's Order*, pp. 9:23-10:4 [Docket No. 31; E.R. 113:23-114:4.] Sirius' failure to provide Knutson with a copy of the rules and procedures governing the arbitration of any claims related to the Customer Agreement is further compounded by the fact that the Customer Agreement was an adhesion contract entirely drafted by Sirius.

"The term [contract of adhesion] signifies a standard contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Neal v.*

*State Farm Ins. Companies*, 188 Cal. App. 2d 690, 694 (1961). The Customer Agreement, which was entirely drafted by Sirius, the party with superior bargaining power, and which by its terms, left no room for negotiation, is properly classified as a contract of adhesion. *See Goodridge v. KDF Auto. Group, Inc.*, D060269, 2012 WL 3635279, *7 (Cal. Ct. App. Aug. 24, 2012) (Contract was procedurally unconscionable were plaintiff "was never informed that the lease contained an arbitration clause, much less offered an opportunity to negotiate its inclusion within the lease or to agree upon its specific terms."). Given the nature of the Customer Agreement, Sirius cannot deny its knowledge of the provision regarding the rules and procedures of the AAA, and therefore cannot escape from the fact that it failed to provide Knutson with a copy of the rules by which Sirius chose to bind Knutson.[2] *District Court's Order*, pp. 9:23-10:4 [Docket No. 31; E.R. 113:23-114:4.]

---

[2] In *Sparks v. Vista Del Mar Child & Family Services*, 207 Cal. App. 4th 1511, 1523, 145 Cal. Rptr. 3d 318, 326 (2012), as modified on denial of reh'g (Aug. 20, 2012), the arbitration clause was procedurally unconscionable where the arbitration rules specified in the arbitration clause were not provided to plaintiff. Here, like in *Sparks*, Sirius did not provide the arbitration agreement to Knutson until a month after his free trial of the satellite radio began, and its therefore procedurally unconscionable. Also, in *Cisneros v. Am. Gen. Fin. Services, Inc.*, C 11-02869 CRB, 2012 WL 3025913, *5 (N.D. Cal. July 24, 2012), the court found an arbitration clause was procedurally unconscionable where it was a contract of adhesion "imposed and drafted by the party of superior bargaining strength" and "relegate[d]" to the Plaintiff "only the opportunity to adhere to the contract or reject it", and the sales agent did not alert the plaintiff to the presence of the arbitration clause. Similarly, the alleged agreement in the case at bar is a contract

## 2.  The One-Sided Nature Of The Customer Agreement Renders It Substantively Unconscionable

As the District Court itself recognized, a finding of substantive unconscionability is predicated on the presence of one-sided terms.  "'Substantive unconscionability relates to the effect of the contract or provision.  A lack of mutuality is relevant in analyzing this prong.  The term focuses on the terms of the agreement and whether those terms are so one-sided as to shock the conscience." *District Court's Order*, p. 10:7-10 [Docket No. 13; E.R. 113:7-10], citing *Davis v. O'Melveny & Myers,* 485 F.3d 1066, 1075 (9th Cir. 2007) *"Concepcion* did not overthrow the common law contract defense of unconscionability whenever an arbitration clause is involved. Rather, the Court reaffirmed that the savings clause preserves generally applicable contract defenses such as unconscionability, so long as those doctrines are not 'applied in a fashion that disfavors arbitration.' *Concepcion,* 131 S.Ct. at 1747." *Kilgore v. KeyBank, Nat. Ass'n*, 673 F.3d 947, 963 (9th Cir. 2012).  "The unconscionability principles on which we rely govern *all* contracts, are not unique to arbitration agreements, and do not disfavor arbitration." *Sanchez v. Valencia Holding Co., LLC*, 201 Cal. App. 4th 74, 135 Cal.

---

of adhesion, and Knutson was not alerted to an arbitration agreement at the time he purchased a vehicle with the free trial satellite radio service, and is therefore procedurally unconscionable.

Rptr. 3d 19, 29 (2011) *review granted and opinion superseded*, 272 P.3d 976 (Cal. 2012).

        a.      *The Customer Agreement is lacking in mutuality and an actual notice requirement*

Sirius contends that the Customer Agreement has equal effect on both parties by stating that "ANY DISPUTE MAY BE RESOLVED BY BINDING ARBITRATION." *Motion to Compel*, pp. 3:1-5 [Docket No. 6; E.R. 022:1-5.] However, this apparent mutuality, along with every other provision of the Customer Agreement, is completely vitiated by the provision contained in section "B. 1." of the Customer Agreement entitled "Changes to Terms", which states:

> WE RESERVE THE RIGHT TO CHANGE THE
> TERMS OF THIS AGREEMENT AT ANY TIME.

*Ruhland Decl. in Support of Mtn. to Compel*, Exhibit A, p. 6 [Docket No. 6; E.R. 032.]

Through this one simple sentence, Sirius has granted itself the overarching power to at any time, change any term contained in the ten page Customer Agreement without any explanation, consultation, or justification.[3] As such, any term contained in the Customer Agreement, which on its face appears to apply equally to all parties involved, is in fact subject to Sirius' self-proscribed veto power. As the Court in *Saika v. Gold,* 49 Cal. App. 4th 1079 (1996) recognized,

---

[3] In *Sparks*, *supra*, 207 Cal. App. 4th at 1523, the court found that "An agreement to arbitrate is illusory if … the employer can unilaterally modify the handbook." Sirius' Customer Agreement is likewise illusory because Sirius reserved for itself the unilateral right to modify the agreement at any time.

the strong public policy favoring arbitration "is manifestly undermined by provisions in arbitration clauses which seek to make the arbitration process itself an offensive weapon in one party's arsenal." *Saika v. Gold*, 49 Cal. App. 4th at 1081. Through the inclusion of this provision in the Customer Agreement, Sirius is attempting to effectuate exactly what the court in *Saika* warned of.

The inclusion of this provision in the Customer Agreement is further compounded by the fact that, by its terms, the Customer Agreement does not impose any duty on Sirius to give any actual notice to the other party to the Customer Agreement when making such unilateral changes. After granting Sirius the sole right to make changes to the terms of the Customer Agreement at its own discretion, Section "B. 1." of the Customer Agreement then states that:

> ANY CHANGES WILL BE EFFECTIVE UPON
> POSTING OF THE REVISIONS ON THE SITE
> REFLECTING THE NEW EFFECTIVE DATE.
> YOUR CONTINUED USE OF THE SERVICE
> FOLLOWING THE POSTING OF THE CHANGES
> ONLINE WILL CONSTITUTE YOUR ACCEPTANCE
> OF SUCH CHANGES.

*Ruhland Decl. in Support of Mtn. to Compel*, Exhibit A, p. 6 [Docket No. 6; E.R. 032.]

Section "J. 1." of the Customer Agreement, entitled "Notices", states that "Your notices to us will be deemed given when we receive them at the telephone number or, in writing at the address, set forth above at 'CONTACT

INFORMATION.'" *Ruhland Decl. in Support of Mtn. to Compel*, Exhibit A, p. 6 [Docket No. 6; E.R. 032.] In drafting the Customer Agreement, Sirius made clear that no notice would be deemed given to Sirius by the other party to the Customer Agreement until Sirius actually *received* the notice *at Sirius' listed telephone number or listed address*. This provision clearly demonstrates the importance Sirius attaches to it being given notice of any information regarding the Customer Agreement. In contrast, if Sirius is ever in a position where it has to give notice of a material change to the Customer Agreement, notice will be deemed provided simply by posting the changes on "the site". *Id.* at Section "B. 1." [Docket No. 6; E.R. 032.]

Sirius' method of proscribing notice is seriously flawed. Sirius is not required to provide notice to the consumer at their telephone number or address; Sirius can get away with merely posting the notice on "the site." *Id.* In contrast, Sirius has included in the Customer Agreement the telephone number and address where notice to Sirius is to be given by the consumer. *Id.* at Section "A." Under this definition of "notice", the only way for the consumer to receive actual notice of any changes made by Sirius is by taking the initiative of checking "the site" on a daily basis. *Id.* at Section "B. 1."

This same Court, in ruling on the enforceability of an arbitration agreement, held that a provision contained within the arbitration agreement, which allowed

only the drafting party, Circuit City Stores, Inc., to modify or terminate the agreement, was substantively unconscionable. *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1179 (9th Cir. 2003). The relevant provision of the standard agreement between Circuit City Stores, Inc. and its employees stated "Circuit City may alter or terminate the Agreement and these Dispute Resolution Rules and Procedures on December 31st of any year upon giving 30 calendar days written notice to Associates." *Id.* (internal quotation marks omitted).

The Court based its finding of substantive unconscionability on the fact that the subject provision allowed Circuit City Stores, Inc. to unilaterally modify or terminate all of its dispute resolution agreements with its employees while failing to afford such power to its employees. *Id.* The Court went on to point out that "[a]lthough the agreement requires Circuit City to provide exiguous notice to its employees of termination or any modification, such notice is trivial when there is no meaningful opportunity to negotiate the terms of the agreement." *Id.* Ultimately, the Court based its holding on the fact that "[b]y granting itself the sole authority to amend or terminate the arbitration agreement, Circuit City proscribes an employee's ability to consider and negotiate the terms of her contract." *Id.*

The Customer Agreement's provision granting Sirius the unilateral right to amend any of the terms of the Customer Agreement is strikingly similar to that contained in the arbitration agreement at issue in *Ingle*, which this Court held to be

substantively unconscionable. Both the arbitration agreement in *Ingle* and the Customer Agreement presently at issue contain a provision granting the party who drafted the agreement the unilateral power to amend the terms of the agreement. The notice of any changes to the agreement in *Ingle*, which the drafting party was required to give, and which this Court found to be "exiguous," was actually more effective than the "notice" Sirius is required to give to its consumers.

The arbitration agreement in *Ingle* only allowed Circuit City Stores, Inc. to make changes to the arbitration agreement on December 31st of each year, only after having given 30 calendar days written notice to its employees. Thus, at a minimum, Circuit City Stores, Inc.'s employees could expect when they should be on the lookout for any changes to the arbitration agreement. Conversely, here, Sirius can make any changes it would like to the terms of the Customer Agreement *on any day of the year*. Further, Sirius is not required to provide any advance notice given that "any changes will be effective upon positing of the revisions on the site." *Ruhland Decl. in Support of Mtn. to Compel*, Exhibit A, Section "B. 1." [Docket No. 6; E.R. 032.] Thus, if this Court found the provision of the arbitration agreement in *Ingle* involving the giving of notice of changes to the arbitration agreement to be "exiguous," the Court must surely make a similar finding with regard to the "notice" provision, or lack thereof, in the Customer Agreement.

/ / /

b.    *The Customer Agreement precludes statutory remedies and punitive damages*

California courts have also found substantive unconscionability where an arbitration clause limits the types of remedies that would be available under statute, thus violating the "principle that an arbitration agreement may not limit statutorily imposed remedies such as punitive damages and attorney fees." *Armendariz v. Found. Psychcare Servs., Inc.,* 24 Cal. 4th 83, 103, 99 Cal. Rptr. 2d 745, 6 P.3d 669 (2000); *see also*, *Graham Oil Co. v. ARCO Prods. Co.,* 43 F.3d 1244, 1248 (9th Cir.1994) (rejecting arbitration clause that deprived the plaintiff of its statutory right to punitive damages and attorney's fees).[4]

In *Newton v. Am. Debt Services, Inc.*, 2012 WL 581318, *5 (N.D. Cal. 2012), the court held that the limitation of liability clause in the contract was unconscionable because it "limit[ed] recovery to the amount paid to [d]efendants, even if [plaintiff's] actual damage is significantly higher", while the Credit Repair Organizations Act ("CROA") "permits a customer to be awarded the *greater* of the amount of any actual damage sustained by a customer as the result of the

---

[4]    *See Sutherland v. Ernst & Young LLP*, 847 F. Supp. 2d 528, 536 (S.D.N.Y. 2012) (agreement was distinguishable from the arbitration agreement in Concepcion that was favorable to the Conceptions because the plaintiff "would not be able to obtain representation or vindicate her [statutory] rights on an individual basis." Similarly, with a statutory award of only $500 for negligent violation of the TCPA, Knutson would not likely be able to obtain legal representation to vindicate his statutory rights absent a class action method of seeking redress.

defendant's violation or any amount paid by the customer to the defendant". *Newton*, *supra*, 2012 WL 581318, *8. "Furthermore, CROA explicitly permits the award of punitive damages but the limitation of liability clause prohibits punitive damages." *Id.* The limitation of liability language in Newton stated:

> Under no circumstances shall Global or the Bank ever be liable for any special, incidental, consequential, exemplary or punitive damages. IN NO EVENT SHALL THE LIABILITY OF GLOBAL OR THE BANK UNDER THIS AGREEMENT EXCEED THE AMOUNT OF FEES YOU HAVE PAID UNDER THIS AGREEMENT.

*Id.* Similarly, the TCPA provides for statutory damages in excess of actual monetary loss, where monetary loss is less than $500. *See* 47 U.S.C.A. § 227(c)(5)(B). The TCPA also allows for treble damages, similar to punitive damages. *Id.* at § 227(c)(5). Sirius' agreement here attempts to preclude any type of liability on its part, and is thus more restrictive than the unconscionable provision in *Newton* because the language used by Sirius' excludes even "direct" damages or liability based mere "negligence". The limitation on liability in Section "H. 2." of the Customer Agreement states in part:

> IN NO EVENT ARE SIRIUS, ITS AFFILIATES OR WSI, LIABLE FOR ANY DIRECT, INDIRECT, SPECIAL, INCIDENTAL, OR CONSEQUENTIAL, EXEMPLARY OR PUNITIVE DAMAGES, LOST PROFITS, OR LOSSES RELATING TO THE USE, LOSS OF USE OR DATA, OR PURCHASE OF ANY RECEIVER OR EQUIPMENT, OR YOUR PURCHASE OR USE OF THE SERVICE, OR FROM ANY

CONTENT POSTED ON THE SITE BY US OR ANYONE ELSE, WHETHER BASED ON NEGLIGENCE OR OTHERWISE, AND WHETHER OR NOT WE HAVE BEEN ADVISED OF THE POSSIBILITY THEREOF, WHETHER ARISING OUT OF BREACH OF THIS AGREEMENT, TORT OR ANY OTHER CAUSE OF ACTION RELATING TO THE PERFORMANCE OR NON-PERFORMANCE OF THIS AGREEMENT.

*Ruhland Decl. in Support of Mtn. to Compel*, Exhibit A, p. 9 [Docket 6; E.R. 035.]

Therefore, Sirius' limitation of liability clause is substantively unconscionable like the similar clause in *Newton*, *supra*, at *8.

       c.    *Consumer plaintiffs may have to pay Sirius' attorney's fees*

Furthermore, the attorney's fee provision here is substantively unconscionable because it poses a risk to consumer plaintiffs that they will have to pay the defendant's attorney's fees, as was the case in *Newton*. Sirius' cost sharing provision in Section "I. 5." states in relevant part, "…a party may recover any or all expenses from another party if the arbitrator, applying applicable law, so determines." *Ruhland Decl. in Support of Mtn. to Compel*, Exhibit A, p. 6 [Docket No. 6; E.R. 032.] This is very similar to the language in *Newton*, which stated, "…the prevailing party shall be entitled to collect from the opposing party to such action such party's reasonable litigation costs and attorneys fees and expenses…." *Newton*, *supra*, at *8. Thus, this cost sharing provision here is substantively unconscionable because "permitting exposure to Defendant's attorney's fees and

litigation costs, the Agreements may deter customers with legitimate disputes from bringing suit in contravention of their statutory rights." *Id.*

       d.    *Sirius carves out for itself the right to litigate certain claims*

In *Cisneros v. Am. Gen. Fin. Services, Inc.*, C 11-02869 CRB, 2012 WL 3025913, *7 (N.D. Cal. July 24, 2012), the arbitration agreement was substantively unconscionable because it gave the "party with stronger bargaining power has restricted the weaker party to the arbitral forum, but reserved for itself the ability to seek redress in either an arbitral or judicial forum as to issues that matter to it the most." Sirius' arbitration agreement requires binding arbitration for most claims, but carves out and reserves for itself the right to litigation claims most important to it because they relate to communications law (*See* Customer Agreement, Section I. 3; *Ruhland Decl. in Support of Mtn. to Compel*, Exhibit A, p. 6 [Docket No. 6; E.R. 032], and Sirius is in the satellite radio business. Therefore, as in *Cisneros*, this provision is also substantively unconscionable.

       e.    *The contingent forum selection clause disadvantages Knutson*

Similar to the forum selection clause in *Newton*, the contingent forum selection clause in this case is substantively unconscionable because the contingent forum is located in "New York, New York" (*Ruhland Decl. in Support of Mtn. to*

*Compel*, Exhibit A, Section "I. 6", p. 6 [Docket No. 6; E.R. 032])[5], a forum far from Knutson's residence in Southern California, "thus giving [defendant] a[n] unfair advantage at the consumer's expense by requiring that the consumer come to [defendant's] home city to arbitrate [his] claims." *Newton*, *supra*, at *9.

f.       *The class action waiver favors only the drafting party*

In *Stern v. Cingular Wireless Corp.*, 453 F. Supp. 2d 1138, 1148-49 (C.D. Cal. 2006), the court found an arbitration agreement in a consumer contract that precluded class actions to be substantively unconscionable where "styled as a mutual prohibition on class actions, [but] the likelihood of defendants bringing a class action against their wireless customers [was] vanishingly small." Similarly, the likelihood that Sirius would ever bring a class action against its users of satellite radio is likewise vanishingly small, absent evidence that Sirius' customers frequently violate the terms of the alleged agreement, which makes this class action waiver unconscionable for lacking mutuality even though it is styled as a mutual waiver.[6] In reality, the only party interested in class action litigation is

---

[5] Section "I. 6." of the Customer Agreement states that should the arbitration agreement be found unenforceable, the parties must litigate in New York, New York, which, for a California resident, is on the other side of the Country. *Ruhland Decl. in Support of Mtn. to Compel*, Exhibit A, p. 6 [Docket No. 6; E.R. 032.] This is a further example of how consumer unfriendly and one-sided the entire Customer Agreement is, including the Arbitration Agreement.

[6] The *Goodridge* Court found four arbitration terms of the consumer agreement substantively unconscionable as "[falling] outside the reasonable expectations of

Knutson and similarly situated consumers who have been harmed by Sirius'
violation of the TCPA. Sirius' conduct here, including the language in the
Customer Agreement itself, demonstrate that Sirius has done nearly all that it can
to ensure the important right of access to the court system and the class action
method of resolving disputes is striped from Knutson and similar consumers.

Therefore, the fact that the Customer Agreement deprives consumers who
are parties to the Customer Agreement of any meaningful opportunity to negotiate
any changes made by Sirius to its terms; lack of a duty on Sirius' part to provide
actual notice of changes to the terms of the Customer Agreement; the possibility
that Knutson may be forced to litigate in a distant forum; the Customer Agreement
precludes an award of statutory damages, and serves to deter legal action by

Goodridge as the nondrafting party and [were] unduly oppressive", even though
the provisions were "ostensibly bilateral and applie[d] to both parties, [because] its
practical effect [was] to favor [the drafter]". *Goodridge*, *supra*, 2012 WL 3635279
at *10. First, the arbitration clause provided that either party may appeal an
arbitrator's award against it if in excess of $100,000 against that party, but only the
defendant "realistically could suffer an award against it in excess of $100,000." *Id.*
Second, the arbitration clause provided that either party may appeal an arbitrator's
award of injunctive relief against it, yet only defendant "realistically could suffer
an award of injunctive relief against it." *Id.* Third, the arbitration provision did
not inform the plaintiff "of the exact amount required to file an appeal and
therefore may have the effect of discouraging him from appealing." *Id.* at *11.
Lastly, the defendant exempted itself from having to arbitrate certain remedies in
an attempt to "maximize its advantage over Goodridge by avoiding arbitration of
its claims." *Id.* The Court then upheld the trial court's decision to not sever the
unconscionable provisions because the drafter "designed its arbitration clause to
impose arbitration not simply as an alternative to litigation, but as an inferior
forum that would give it an advantage over its buyers." *Id.* at *12-13.

placing a risk on consumer plaintiffs of paying Sirius' attorney's fees; Sirius has carved out and reserved for itself the right to litigate certain claims important to Sirius; in addition to the vanishingly small likelihood that Sirius would ever sue its consumers in a class action, compel the finding that the Customer Agreement is substantively unconscionable.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

# VII. CONCLUSION

For the foregoing reasons, the District Court erred in granting Sirius' Motion to Compel Arbitration and Dismissal of the case. Therefore, Knutson respectfully requests that this Court reverse the District Court ruling and find that the Customer Agreement and the Arbitration Agreement contained therein are unenforceable for want of mutual assent, as well as unconscionable. Knutson further respectfully requests that the case be reinstated in the District Court as a class action against Sirius for Sirius' violations of the TCPA.

Dated: September 24, 2012

Respectfully Submitted,
**KAZEROUNI LAW GROUP, APC**

BY: /S/ ABBAS KAZEROUNIAN, ESQ.

Abbas Kazerounian
Attorney for Appellants
2700 North Main Street, Ste 1000
Santa Ana, CA 92705
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

**Hyde & Swigart**
Joshua B. Swigart, Esq.
Robert L. Hyde, Esq.
411 Camino Del Rio South, Ste 301
San Diego, CA 92108-3551
Telephone: (619) 233-7770
Facsimile: (619) 297-1022

Attorneys for Plaintiffs-Appellants

## STATEMENT OF RELATED CASES

Pursuant to Circuit Rule 28-2.6, undersigned counsel declares that there are no known related cases pending in this Court.

## CERTIFICATE OF COMPLIANCE PURSUANT TO
## FED. R. APP. 32(a)(7)(C) AND CIRCUIT RULE 32-1

I certify pursuant to Fed. R. App. P. 32(a)(7)(C) and Ninth Circuit Rule 32-1 that the attached Brief of Appellant complies with the type-volume limitation of Fed. R. App. P. 32(a)(5) and (6) as it is proportionately spaced, has a typeface of 14 points, and contains 10, 385 words, excluding the portions exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

Dated: September 24, 2012

Respectfully Submitted,
**KAZEROUNI LAW GROUP, APC**

BY: /S/ ABBAS KAZEROUNIAN, ESQ.
Abbas Kazerounian
Attorney for Plaintiffs-Appellants
2700 North Main Street, Ste 1000
Santa Ana, CA 92705
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

**Hyde & Swigart**
Joshua B. Swigart, Esq.
Robert L. Hyde, Esq.
411 Camino Del Rio South, Ste 301
San Diego, CA 92108-3551
Telephone: (619) 233-7770
Facsimile: (619) 297-1022

Attorneys for Plaintiffs-Appellants

# CERTIFICATE OF SERVICE

I, Abbas Kazerounian, certify that on September 24, 2012, an original and eight (7) copies of Appellants' Opening Brief, with four (4) Excerpts of Record, were sent, via overnight mail, postage prepaid, to the Clerk of the United States Court of Appeals for the Ninth Circuit, 95 Seventh Street, San Francisco, California 94110-3939, and two copies of Appellants' Opening Brief, with no additional Excerpt of Record, were sent to the following, via overnight mail, postage prepaid:

**MANATT, PHELPS & PHILLIPS, LLP**
CHAD S. HUMMEL (State Bar No. CA 139055)
E-mail: chummel@manatt.com
REBECCA WAHLQUIST (State Bar No. 215948)
E-mail: bwahlguist@manatt.com
LYDIA M. MENDOZA (State Bar No. 247916)
E-mail: lmendoza@manatt.com
11355 West Olympic Boulevard
Los Angeles, CA 90064-1614
Telephone: (310) 312-4000
Facsimile: (31 0) 312-4224

Attorneys for Defendant-Appellee

KAZEROUNI LAW GROUP, APC

BY: /S/ ABBAS KAZEROUNIAN, ESQ.
Abbas Kazerounian
Attorney for Plaintiffs-Appellants
2700 North Main Street, Ste 1000
Santa Ana, CA 92705
Telephone: (800) 400-6808
Facsimile: (800) 520-5523