No. 12-56120

# In the United States Court of Appeals
# for the Ninth Circuit

---

**ERIK KNUTSON, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,**

*Plaintiffs-Appellants,*

vs.

**SIRIUS XM RADIO INC.,**

*Defendant-Appellee.*

---

On Appeal From the United States District Court
for the Southern District of California
Hon. Anthony J. Battaglia
No.: 12cv418 AJB (NLS)

---

**BRIEF OF APPELLEE SIRIUS XM RADIO INC.**

---

MANATT, PHELPS & PHILLIPS, LLP
CHAD S. HUMMEL
BECCA WAHLQUIST
LYDIA M. MENDOZA
11355 West Olympic Boulevard
Los Angeles, CA 90064-1614
Telephone: (310) 312-4000

Attorneys for Defendant-Appellee
*Sirius XM Radio Inc.*

## CORPORATE DISCLOSURE STATEMENT (F.R.A.P. 26.1)

Appellee Sirius XM Radio Inc. ("Sirius XM") provides the following information under Federal Rule of Appellate Procedure 26.1:

Liberty Media Corporation holds preferred stock of Sirius XM convertible into 40% of the common stock of Sirius XM. Sirius XM has no parent corporation.

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..................................................................... 1

II.   STATEMENT OF ISSUES PRESENTED ............................... 4

III.  STATEMENT OF FACTS ......................................................... 5

     A.    Knutson's 90-day Subscription to Sirius SM
           Programming ......................................................................... 5

     B.    The Arbitration Provision ................................................. 7

IV.  SUMMARY OF ARGUMENT ................................................. 9

V.   ARGUMENT: SIRIUS XM'S ARBITRATION
      PROVISION IS BINDING AND ENFORCEABLE .............. 10

     A.    Sirius XM's Dispute Resolution Provision Is
           Binding On Knutson ......................................................... 11

           1.    The Agreement Provides That It May Be
                  Cancelled at Any Time ...................................... 11

           2.    Knutson Assented to the Agreement and the
                  Arbitration Clause by Accepting the Service
                  and Failing to Cancel ......................................... 14

           3.    The Length of Time Between Receipt of the
                  Customer Agreement and Activation of
                  Service is Not Dispositive on the Issue of
                  Whether an Enforceable Agreement Exists ........ 17

     B.    The Arbitration Provision Contained in Sirius
           XM's Customer Agreement Is Not Substantively
           Unconscionable ................................................................. 22

           1.    Sirius XM's Reservation of the Right to
                  Modify the Customer Agreement as a Whole
                  Does Not Render the Arbitration Provision
                  Unenforceable. .................................................... 26

i

**TABLE OF CONTENTS**
**(continued)**

Page

a. Arguments about substantive unconscionability of the entire Customer Agreement are for the arbitrator, not the Court, to decide............26

b. In any case, Sections B.1 and J.1 are not substantively unconscionable. ............28

2. Sirius XM's Customer Agreement Does Not, as Knutson Asserts, Preclude Knutson From Seeking Statutory Damages or Other Available Remedies for His TCPA Claims. .......32

3. Sirius XM's Arbitration Provision Does Not Authorize the Arbitrator to Require Plaintiffs to Pay Sirius XM's Attorneys' Fees if They Could Not Be Awarded by a Court..................................................................34

4. Knutson Does Not Show That the Type of Claims Exempted From Arbitration Solely Benefit Sirius XM. .............................................36

5. Sirius XM's Arbitration Provision Does Not Require Consumers to Arbitrate Claims in New York ...........................................................38

6. Class Action Waivers Are Not by Themselves Substantively Unconscionable........39

VI. CONCLUSION....................................................................41

ii

# TABLE OF AUTHORITIES

**Page**

## CASES

*24 Hour Fitness, Inc. v. Superior Court,*
    66 Cal. App. 4th 1199 (1998) ........................................................31

*Armendariz v. Foundation Health Pyschcare Servs., Inc.,*
    24 Cal.4th 83 (2000) ..........................................................24, 25, 29

*AT&T Mobility v. Concepcion,*
    131 S. Ct. 1740 (2011)............................................................passim

*Barkin v. Norwegian Caribbean Lines,*
    1988 A.M.C. 645 (D.Mass. 1987) ...................................................13

*Bischoff v. DirecTV, Inc.,*
    180 F.Supp.2d 1097 (C.D. Cal. 2002) ......................................passim

*Bolker v. C.I.R.,*
    760 F.2d 1039 (9th Cir. 1985) ........................................................24

*Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.,*
    622 F.3d 996 (9th Cir. 2010) ..........................................................28

*Brown v. Washington/Baltimore Cellular, Inc.,*
    109 F.Supp.2d 421 (D. MD. 2000)..................................................37

*Buckeye Check Cashing, Inc. v. Cardegna,*
    546 U.S. 440 (2006)................................................................passim

*Carnival Cruise Lines, Inc. v. Shute,*
    499 U.S. 585 (1991)........................................................................14

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.,*
    207 F.3d 1126 (9th Cir. 2000) ........................................................10

*Circuit City Stores, Inc v. Najd,*
    294 F.3d 1104 (9th Cir. 2002) ........................................................16

*Cisneros v. American General Financial Services, Inc.,*
    C11-02869 CRB, 2012 WL 3025913 (N.D. Cal., July 24,
    2012) ..............................................................................................37

iii

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Coneff v. AT&T Corp.*,
　673 F.3d 1155 (9th Cir. 2012) ................................................39, 40

*Craig v. Brown & Root, Inc.*,
　84 Cal. App. 4th 416 (2000) .........................................................14

*Davis v. O'Melveny & Myers*,
　485 F.3d. 1066 (9th Cir. 2007) ....................................................24

*Dean Witter Reynolds, Inc v. Byrd*,
　470 U.S. 213 (1985).......................................................................10

*Discover Bank v. Superior Court*,
　36 Cal.4th 148 (2005) ...................................................................39

*Golden Eagle Ins. Co. v. Foremost Ins. Co.*,
　20 Cal. App. 4th 1372 (1993) .......................................................16

*Goodridge v. KDF Automotive Group, Inc.*,
　D060269, 2012 WL 3635279 (Cal. Ct. App., Aug. 24 2012) .40, 41

*Hendricks v. AT & T Mobility, LLC*,
　823 F.Supp.2d 1015 (N.D. Cal. 2011).........................................40

*Higgens v. Superior Ct.*,
　140 Cal.App.4th 1238 (2006) ......................................................23

*In re Easysaver Rewards Litigation*,
　737 F.Supp.2d 1159 (S.D. Cal. 2010)..........................................37

*Ingle v. Circuit City Stores, Inc.*,
　328 F.3d 1165 (9th Cir. 2003) ....................................28, 29, 30, 31

*Iskanian v. CLS Transportation Los Angeles, LLC*,
　206 Cal.App.4th 949 (2012) .........................................................40

*Jasso v. Money Mart Exp., Inc.*
　11-CV-5500 YGR, 2012 WL 1309171 (N.D. Cal., April 13,
　2012) .............................................................................................40

*Lewis v. UBS Financial Services Inc.*,
　818 F.Supp.2d 1161 (N.D. Cal. 2011).........................................40

## TABLE OF AUTHORITIES
### (continued)

Page

*Lifescan, Inc. v. Premier Diabetic Services, Inc.*,
   363 F.3d 1010 (9th Cir. 2004) ...................................................... 11

*Lozano v. AT&T Wireless*,
   216 F.Supp.2d 1071 (C.D. Cal. 2002) ...................................passim

*Lozano v. AT&T Wireless*,
   No. CV02- 00090WJRAJWX, 2003 WL 25548566 (C.D.
   Cal., Aug. 18, 2003) ............................................................... 2, 18

*Martinez v. Scott Specialty Gases, Inc.*,
   83 Cal.App.4th 1236 (2000) ........................................................ 31

*Meridian Project Systems, Inc. v. Hardin Const. Co., LLC*,
   426 F.Supp.2d 1101 (E.D. Cal. 2006) .......................................... 18

*Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983) .................................................................. 11, 12

*Murphy v. DIRECTV, Inc.*,
   2:07-CV-06465-JHN, 2011 WL 3319574 (C.D. Cal. Aug. 2,
   2011) .............................................................................. 13, 14, 40

*Nelsen v. Legacy Partners Residential, Inc.*,
   207 Cal. App. 4th 1115 (2012) ............................................... 32, 40

*Newton v. American Debt Services, Inc.*,
   854 F.Supp.2d 712 (N.D. Cal. 2012) ..........................34, 35, 36, 38

*Rent-A-Center, West, Inc. v. Jackson*,
   130 S.Ct. 2772 (2010) ........................................................... 26, 27

*Saika v. Gold*,
   49 Cal.App.4th 1074 (1996) ....................................................... 29

*Sanders v. Swift Transp. Co. of Arizona, LLC*,
   843 F.Supp.2d 1033 (N.D. Cal. 2012) .......................................... 40

*Sparks v. Vista Del Mar Child & Family Services*,
   207 Cal.App.4th 1511 (2012) ...................................................... 31

*Stern v. Cingular Wireless Corp.*,
   453 F. Supp. 2d 1138 (C.D. Cal. 2006) ........................................ 39

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Stirlen v. Supercuts, Inc.*,
  51 Cal.App.4th 1519 (1997) ......................................................... 22

*Ting v. AT&T*,
  319 F.3d 1126 (9th Cir. 2003) ..................................................... 25

*United States v. Greger*,
  716 F.2d 1275 (9th Cir. 1983) ..................................................... 24

*Walker v. Carnival Cruise Lines*,
  63 F.Supp.2d 1083 (N.D. Cal. 1999) ........................................... 12

## STATUTES

Communications Act of 1934 ..................................................... 36, 37

Electronic Communications Privacy Act ........................................... 36

## OTHER AUTHORITIES

137 Cong. Rec. S16204-01 (1991) ..................................................... 41

## RULES

Fed. Rule Civ. Proc., Rule 12 ............................................................ 1

## I.   **INTRODUCTION**

Appellant Erik Knutson ("Knutson") seeks to become a representative plaintiff in a nationwide class action asserting violations of the Telephone Consumer Protection Act ("TCPA"). Knutson cannot bring this case in federal court, however, as he is bound by the mandatory arbitration and class waiver provisions of the Sirius XM Customer Agreement. The district court correctly ruled that, because the Agreement is binding on Knutson and not unconscionable as applied to the allegations in this case, he must proceed with an individual claim under the consumer arbitration rules of the American Arbitration Association ("AAA"). Knutson admittedly received the Customer Agreement more than a month prior to receiving any calls that allegedly violated the TCPA. He chose not to read it, accepted the benefits of the free satellite radio trial subscription services, and never attempted to cancel. This Court should, therefore, affirm the FRCP Rule 12 dismissal.

Knutson argues that he is not bound by the arbitration provision because he never assented. This is because, he says, he did not receive the Customer Agreement within three days of activating his Sirius XM account and therefore could not have cancelled within the three-day period set forth in one provision of the Customer Agreement. This argument ignores both the operative language of the Agreement itself and controlling precedent.

First, in a section entitled "Cancellation," the Customer Agreement specifies that Knutson could cancel his subscription *at any time* between receiving the Agreement (in mid-December 2011) and the end of his free trial subscription (February 7, 2012). Knutson never cancelled; he never made any attempt to cancel; and he never even suggests that he *would have* cancelled had he received the Agreement earlier (indeed, he concedes he did not even read it). Instead, he chose to continue to receive the benefits of his free Sirius XM satellite radio trial subscription for the entire 90 days.

Second, the law provides that customer agreements delivered to purchasers after activation of service are common and enforceable. *See, e.g., Bischoff v. DirecTV, Inc.*, 180 F.Supp.2d 1097, 1105 (C.D. Cal. 2002); *Lozano v. AT&T Wireless*, 216 F.Supp.2d 1071 (C.D. Cal. 2002); E.R. at 109-10 (Order, at p. 5-6).[1] *See also AT&T Mobility v. Concepcion*, 131 S. Ct. 1740, 1750 (2011) ("the times in which consumer contracts were anything but adhesive are long past."). Customers manifest their assent to such contracts by declining, like Knutson, to take action that is necessary to cancel. Moreover, the length of time between the activation of services and the receipt of the customer agreement is not "dispositive on the issue of whether a valid arbitration agreement exists between the parties."

---

[1]    *Lozano* was vacated on other grounds related to class waiver law then in effect in California, *Lozano v. AT&T Wireless*, No. CV02- 00090WJRAJWX, 2003 WL 25548566 (C.D. Cal., Aug. 18, 2003). That law has since been overruled. *See AT&T Mobility v. Concepcion*, 131 S. Ct. 1740 (2011).

*Bischoff*, 180 F.Supp.2d at 1105. Instead, "[t]he more controlling issue is the economic and practical considerations involved in selling services to mass consumers which make it acceptable for terms and conditions to follow the initial transaction." *Id.*; *see also* E.R. 109-10 (Order, at p. 5-6).

Knutson's other argument is that, even if the arbitration provision is otherwise enforceable, he cannot be bound by it because the Agreement, or provisions of the Agreement, are unconscionable. Under California law, procedural unconscionability (such as Knutson tries to show by arguing that he received the Agreement more than three days after activation) is insufficient, by itself, to render an arbitration provision invalid. Instead, to prevail here, Knutson must show **substantive** unconscionability, and of the arbitration clause specifically. He did not, and cannot, make such a showing.

The Customer Agreement's arbitration clause is plainly fair to Knutson and all consumers. It provides for neutral, bilateral arbitration administered by the AAA. The provision applies consumer-friendly rules and procedures that would cap at $125 Knutson's out-of-pocket filing fees for his $1,500-$4,500 TCPA claims and would reimburse him those fees if he were to prevail. *See, e.g.,* E.R. 114-15 (Order at p. 10-11) (noting consumer-friendly provisions); *see also* E.R. 032 (Customer Agreement, at Section I.5). Knutson identifies no aspect of the AAA rules or the specified procedures that is anything less than fair. Further, the

3

U.S. Supreme Court recently held that adhesive consumer contracts may require individual arbitration. *Concepcion*, 131 S. Ct. at 1750.

Instead, Knutson argues (for the first time on appeal) that six provisions of the Customer Agreement render the arbitration clause substantively unconscionable. However, these arguments in no way undermine the fairness of the arbitration clause. Some of the provisions he cites clearly are not unconscionable on their face; others, while also not unconscionable, present matters for the arbitrator to decide, as they go to the Agreement in its entirety, not the arbitration clause. *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-446 (2006) (challenges to an agreement as a whole, not to an arbitration clause specifically, must be decided by the arbitrator). His unconscionability arguments fail as a matter of law.

At their core, Knutson's arguments confirm that this is not a case about vindicating rights of consumers. Rather, it is about Knutson's lawyers' desire to pursue nationwide class claims in an attempt to build up significant statutory damages from which material attorneys' fees might be reaped. But he offers no viable argument for non-enforcement of the arbitration provision contained in his binding Customer Agreement.

## II.    STATEMENT OF ISSUES PRESENTED

Knutson's three issues presented are more appropriately stated as follows:

1.  Must Knutson arbitrate his TCPA claims pursuant to the arbitration provisions of the Sirius XM Customer Agreement when those purported claims arose during his free trial subscription and weeks <u>after</u> he received and had an opportunity to review the Agreement and cancel his subscription?

2.  Should this Court, at Knutson's invitation, circumvent binding Supreme Court authority and hold that all consumers must affirmatively indicate mutual assent to adhesive contracts?

3.  Is Sirius XM's arbitration provision substantively unconscionable such that it cannot be enforced here?

## III.   STATEMENT OF FACTS

### A.   Knutson's 90-day Subscription to Sirius SM Programming

Knutson's complaint alleges that he received three calls from Sirius XM between January 27, 2012, and January 29, 2012, which allegedly violated the TCPA by telemarketing to his cellular telephone without his express consent. *See* E.R. 007-008 (Compl., ¶¶ 14-19). During that time, Knutson was in the midst of his 90-day trial subscription to Sirius XM programming that had been part of his purchase package for his Toyota Tacoma truck. *See* E.R. 029 (Ruhland Decl., ¶ 7). Knutson's truck receiver was activated on November 7, 2012, to receive satellite programming through February 7, 2012. *Id.* (noting Knutson's account number,

EKK9G2CQ).

Sirius XM mailed a "Welcome Kit" — which included the Customer Agreement — to Knutson on November 29, 2011. *See* E.R. 029 (Ruhland Decl., ¶¶ 10-11). Sirius XM's records show that Knutson would have received the Welcome Kit and the Customer Agreement on or about December 12 or 13, 2011 (*see id.*), six weeks before he claims to have received the three calls that form the basis of his claim. The first paragraph of the Customer Agreement applies to both trial subscriptions and paid subscriptions: "This customer agreement ("Agreement") between you and Sirius XM Radio Inc. . . . **applies to your paid, trial, or other subscription ("Subscription") . . .**" E.R. 032 (Customer Agreement, first paragraph) (emphasis added). The Agreement goes on to clarify the parties' relationship and the duties of each party. As an example, Knutson had the right to cancel his trial subscription at any time. *See id.* E.R. 035 (Customer Agreement, Section G.1: CANCELLATION).

As referenced above, Knutson received the Customer Agreement in mid-December 2011, but did not read it. *See* E.R. 072 (Knutson Decl., ¶ 6, lines 1-10). He has never contended that he would have cancelled his subscription, or would have attempted to cancel, had he seen the arbitration clause. Knutson never called Sirius XM to cancel his trial subscription. *See* E.R. 030 (Ruhland Decl., ¶ 14) (no contact from Plaintiff). In no way did he indicate to Sirius XM that he disagreed

with any provision of the Agreement, including the arbitration provision.

## B.    The Arbitration Provision

The Customer Agreement sent to Knutson contains an unambiguous arbitration provision. *See* E.R. 029 (Ruhland Decl., ¶ 11) (verifying that Knutson was sent the September 13, 2011 version of the Sirius XM Customer Agreement). That provision is governed by the Federal Arbitration Act ("FAA"). *See* E.R. 032 (Customer Agreement, Section J at J.5). The dispute resolution section (**RESOLVING DISPUTES**) states in capital letters:

> PLEASE READ THIS PROVISION OF THIS
> SECTION CAREFULLY, IT PROVIDES THAT ANY
> DISPUTE MAY BE RESOLVED BY BINDING
> ARBITRATION. BY AGREEING TO ARBITRATION,
> YOU ARE HEREBY WAIVING THE RIGHT TO GO
> TO COURT, INCLUDING THE RIGHT TO A
> JURY . . . .

*See* E.R. 032 (Customer Agreement, Section I: Resolving Disputes). If a claim has not been resolved through an informal process (*see* Section I.1), then the Agreement requires the party wishing to assert a claim to file an arbitration with the AAA. *See id.*, Section I.2.

The Agreement allows only individual arbitration by prohibiting claims from being arbitrated on a class-wide basis and claimants from acting as class representatives. *See id.*, Section I.6: Class Actions and Severability (explaining the requirement to individually arbitrate, and noting that it is a "Class Action

Waiver"). The arbitration provision applies equally to all parties and encompasses "any Claim between us, and any claim by either of us against any agent, employee, successor, or assign of the other… whether related to this Agreement or otherwise … including any dispute as to the validity or applicability of this arbitration clause." *See* E.R. 032 (Customer Agreement, Section I.2). The provision requires that arbitration shall be administered by the AAA rules, which have special rules for consumer arbitrations.

The arbitration clause at issue here provides subscribers with an inexpensive forum for dispute resolution: subscribers are required only to pay the initial filing fee required by the AAA Consumer-based rules, and Sirius XM agrees not only to pay the remainder of the fees up through the first day of an arbitration proceeding, but also to *reimburse* the filing fees for any subscriber who prevails on his or her claims in arbitration. *See* E.R. 032 (Customer Agreement, Section I.5: Cost Sharing). Thus, other than a $125 maximum filing fee, which would be reimbursed if the consumer prevails, a consumer does not have any other expenses in pursuing claims less than $10,000. *See id.*, *see also* E.R. 101 (AAA Consumer Rules, at Section C.8, "Fees and Deposits to be Paid by the Consumer"). For claims between $10,000 and $75,000, subscribers are only responsible for a maximum of $187.50 in filing fees, which again would be reimbursed if the

consumer prevails. *See id.*[2] Finally, the Agreement provides an exception to the arbitration requirement if a consumer wishes to forgo arbitration and bring disputes instead in small claims court. *See* E.R. 032 (Customer Agreement, Section I.4).

The Customer Agreement specifies that continued receipt of Sirius XM service means that a consumer has agreed to the Agreement's terms. *See id.* (Customer Agreement, all-capitals text under box). The Agreement also states that if a subscriber does not want to be bound at all by its terms, the subscriber should call Sirius XM to cancel the subscription within three days of the receiver's activation. *See id.* This three-day provision is the focus of Knutson's argument, but it is not the only option given to subscribers for cancellation. The contract also clearly specifies that a subscriber can cancel *at any time. See* E.R. 05 (Customer Agreement, Section G.1) (subscriber may cancel subscription at any time). Knutson never called to cancel after receiving the Agreement in mid-December 2011. *See* E.R. 030 (Ruhland Decl., ¶ 14). Instead, his Sirius XM satellite programming was available for his use through February 7, 2012. *Id.,* ¶ 7.

## IV.  <u>SUMMARY OF ARGUMENT</u>

Knutson's arguments on appeal fail for two primary reasons. First, Knutson is bound by the Customer Agreement, because he had the opportunity to cancel his

---

[2]  Sirius XM, on the other hand, agrees to pay a minimum of $775 in administrative fees, a $200 hearing fee, and all remaining arbitrator compensation. *See* E.R. 101 (AAA Consumer Rules, at Section C.8, "Fees and Deposits to be Paid by the Business").

subscription after receiving and reviewing the Agreement. He never did, and instead accepted the benefits of the service. *See* Part V.A, *infra*. Second, the arbitration provision is not substantively unconscionable. The six provisions he identifies (for the first time) fail to establish unconscionability as a matter of law. *See* Part V.B, *infra*.[3]

## V. ARGUMENT: SIRIUS XM'S ARBITRATION PROVISION IS BINDING AND ENFORCEABLE.

The "principal purpose" of the FAA is to "ensur[e] that private arbitration agreements are enforced according to their terms." *Concepcion*, 131 S. Ct. at 1748. The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc v. Byrd*, 470 U.S. 213, 218 (1985). "A court's role under the Act is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. If the response is affirmative on both counts, then the Act requires the court to enforce the arbitration agreement in accordance with its terms." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). *See also*

---

[3]    Two of Knutson's substantive unconscionability arguments are not even properly before this Court, as they involve challenges to the Customer Agreement as a whole, and not specifically the arbitration provision. Such challenges must be heard by an arbitrator. *See Buckeye Check Cashing*, 546 U.S. at 445-446.

*Lifescan, Inc. v. Premier Diabetic Services, Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004) (same). Because of the strong policy favoring arbitration, doubts are to be resolved in favor of the party moving to compel arbitration. *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).

Here, there is no dispute that Sirius XM's Customer Agreement contains an individual arbitration provision in the Dispute Resolution Section. *See* E.R. 032 (Customer Agreement, Section I: Resolving Disputes). The district court determined that this arbitration provision within the Customer Agreement is binding and enforceable. Knutson now asks this Court to reverse on two primary grounds. First, he argues that there was no binding contract because he did not assent as a matter of law; second, he argues that the arbitration provision is unconscionable and therefore unenforceable against him. Each of these arguments is meritless.

### A. Sirius XM's Dispute Resolution Provision Is Binding On Knutson.

#### 1. The Agreement Provides That It May Be Cancelled at Any Time.

The crux of Knutson's argument on appeal is that, because the Agreement stated that it must be cancelled within three business days of activation of the account, and because he did not receive the agreement until several weeks after his free trial subscription was activated, he could not have assented to the arbitration clause. This argument fails for several reasons.

First, while Knutson never mentions this, the Agreement contains (in addition to the three-day provision), a separate provision, entitled "CANCELLATION." E.R. 035 (Customer Agreement, Section G). That provision states, in relevant part:

> 1. Cancellation: You may cancel your Subscription *at any time* by notifying Listener Care. . . .

*Id.* (emphasis added). Knutson cannot overcome this clear language, which negates his entire argument, by ignoring it.

Second, it is undisputed that Knutson never read his contract. Therefore, the timing of its receipt is irrelevant to his failure to exercise his right to cancel. While he argued that "it did not appear to be a contract" E.R. 056 (Opposition to Motion to Compel Arbitration, p. 12: 8-9), this Court can readily observe that it is entitled "CUSTOMER AGREEMENT AND TERMS OF USE" and defines itself as an "Agreement" in the second line. E.R. 032 (Customer Agreement, preface). Knutson cannot explain why a reasonable consumer would not recognize the document as a "contract." Thus, the general rule applies that a party cannot avoid a contract simply by claiming he did not read it. *See Lozano*, 216 F.Supp.2d at 1073 (with respect to terms and conditions that are sent after an initial transaction: "Competent adults are bound by such documents, read or unread."); *Walker v. Carnival Cruise Lines*, 63 F.Supp.2d 1083, 1089 (N.D. Cal. 1999) (holding that a plaintiff is bound by a contract where the plaintiff had the opportunity to read it:

12

"It is misleading to focus on whether she actually read the contract; *rather the proper focus is on whether she had the opportunity to read it*.") (citing *Barkin v. Norwegian Caribbean Lines,* 1988 A.M.C. 645, 650 (D.Mass. 1987) (emphasis in original); *see also Murphy v. DIRECTV, Inc.*, 2:07-CV-06465-JHN, 2011 WL 3319574 (C.D. Cal. Aug. 2, 2011) ("Defendants have presented sufficient evidence to show that Plaintiffs received the Customer Agreement with the arbitration provision, and were bound by the contract, even if they did not read it.").

Third, assuming for the sake of argument that the Agreement actually allowed cancellation only within three days of activation, Knutson submitted no evidence that he made any attempt to bring to Sirius XM's attention the fact that he received the contract after that three-day period had elapsed. Nor did he submit evidence that anyone at Sirius XM had indicated to him that, in such circumstances, he would not be allowed to cancel his free trial subscription before the full 90-day period had expired.

Finally, Knutson has never once suggested that, had he received the Agreement within three business days of activation, he would have cancelled the contract — because he did not accept the arbitration provision, or for any other reason. Without that essential assertion, the fact that he did not receive the Agreement in time to cancel it (as he claims to have interpreted his cancellation rights) is meaningless.

2. **Knutson Assented to the Agreement and the Arbitration Clause by Accepting the Service and Failing to Cancel.**

Sirius XM does not dispute Knutson's assertion that, under California law, mutual assent is a required element of contract formation. Sirius XM does dispute Knutson's argument that, as a matter of law, he could not have assented to the Customer Agreement (and therefore it was not binding on him) because he received it too late to cancel his 90-day free trial subscription.

Courts hold that consumer contracts are enforceable where the consumer continues to accept service. *See, e.g., Craig v. Brown & Root, Inc.*, 84 Cal. App. 4th 416, 420-21 (2000) (compelling arbitration after finding that where employer mailed memorandum containing arbitration provision to employee and explained that it applied to future employment, employee assented to terms of arbitration provision by continuing to work for employer); *see also Murphy*, *supra*, 2011 WL 3319574 (subscribers who received DIRECTV's contract with the arbitration provision after their service had already been activated "were bound by the contract, even if they did not read it."). The United States Supreme Court has also recognized that acceptance of contract terms can be implied through action or inaction. *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593-95 (1991) (enforcing terms on back of cruise ship ticket after passenger chose to board cruise after receiving ticket).

That is what happened here. Knutson received the Customer Agreement and

14

had an opportunity to review it (although he did not do so).  As discussed above, the Agreement informed him in two separate places that he should notify Sirius XM if he wished to cancel the subscription. E.R. 032 (Customer Agreement, preface);  E.R. 035 (Customer Agreement, at Section G: Cancellation).  The telephone calls upon which Knutson's claims are based did not occur before he received the Customer Agreement; instead, the alleged calls occurred well after he received the Agreement in December 2011.  *See* E.R. 007-008 (Compl., ¶¶ 14-19) (alleging TCPA violations on January 27, 2012, and January 29, 2012).  Knutson had an opportunity to cancel his subscription if he did not agree with the terms of the Customer Agreement – in fact, he had that opportunity for a full six weeks before he received the alleged calls on January 27 and 29, 2012.[4]

Simply put, when Knutson purchased his truck, Sirius XM began to provide service to Knutson on a trial basis for 90 days, from November 7, 2011, to February 7, 2012.  *See* Part III.A, *supra*.  Nowhere in the Agreement does it state – nor has Knutson alleged – that a person with a trial subscription is bound to accept service for any amount of time.  Instead, as the district court correctly noted,

---

[4]    Knutson argues that, if Sirius XM had provided an instruction to customers to contract Sirius immediately after receipt of the Customer Agreement if they desired to reject its terms, "there would be no issue as to whether Knutson assented to the Customer Agreement." App's Br., p. 26-27.  Such arguments highlight Knutson's acceptance of the general rule that assent can be implied through continued receipt of subscription services.  Moreover, such arguments show the fractured nature of Knutson's arguments, as he has conceded that he never read the Agreement and therefore had no portion of the Agreement with which he disagreed.

15

"[Knutson's] consent to be bound by the Customer Agreement was implied by his decision to continue his 90-day trial subscription." E.R. 110 (Order at p. 6).

Knutson argues that his decision to continue using Sirius XM's service did not constitute his assent to be bound by the Customer Agreement, because, "as a general rule, silence or inaction does not constitute acceptance of an offer." App's Br., p. 22. He cites to a Ninth Circuit opinion for this "general rule," *Circuit City Stores, Inc v. Najd*, 294 F.3d 1104 (9th Cir. 2002), but the case on which *Circuit City* relied explains that the "general rule" has exceptions. *Golden Eagle Ins. Co. v. Foremost Ins. Co.,* 20 Cal. App. 4th 1372, 1385-86 (1993) (cited in *Circuit City*) explains:

> As a general rule, silence or inaction does not constitute acceptance of an offer. **There are several well-recognized exceptions to this rule. Acceptance of an offer may be inferred from inaction in the face of a duty to act, and from retention of the benefit offered.** Thus, as courts in other jurisdictions have found, silence coupled with retention of a renewal policy or renewal certificate may constitute sufficient evidence of an acceptance so as to place the renewal in full force and effect.

*Id.* (emphasis added, internal citations omitted). Knutson had a duty to act if he wished not to be bound by the Customer Agreement, he did not act to do so, and he retained the benefits of the agreement. In these circumstances, a valid contract between the parties was formed.

3.    **The Length of Time Between Receipt of the Customer Agreement and Activation of Service is Not Dispositive on the Issue of Whether an Enforceable Agreement Exists.**

Knutson argues that he could not have assented to the Customer Agreement because he was not provided with a copy within three days of his trial subscription's activation, and he focuses on the statement that failure to call Sirius XM within three days of a receiver's activation means that a subscriber has agreed that the Customer Agreement is legally binding. But Knutson's continual focus on the three-day period stated in one section of the Agreement is irrelevant in the context of a consumer form agreement like this one. That is because the "economic and practical considerations involved in selling services to mass consumers ... make it acceptable for terms and conditions to follow the initial transaction." *Bischoff v. DirecTV, Inc.*, 180 F.Supp.2d 1097, 1105 (C.D. Cal. 2002).

Knutson ignores three undisputed facts in making his argument: (1) the Customer Agreement has a cancellation provision that allowed Knutson to cancel his trial subscription *at any time* after receiving the Customer Agreement (*see* E.R. 035 (Customer Agreement, Section G: Cancellation)); (2) Knutson failed to review the Customer Agreement to determine whether or not he agreed with its terms (*see* E.R. 072 (Knutson Decl., ¶ 6, lines 5-10)), and thus cannot claim that he would have acted differently had he received the agreement earlier; and (3) Knutson did

17

not contact Sirius XM after receiving the Customer Agreement to ask that his subscription be cancelled, despite the lapse of the three-day period, because he had just received the contract. *See* E.R. 030 (Ruhland Decl., ¶ 14) (no contact from Knutson). Knutson would have this Court ignore such facts as well, and rule that adhesive contracts sent to a subscriber after the initial transaction lack mutual assent and therefore are not binding.

However, these type of agreements, sometimes referred to as "shrinkwrap" agreements, are commonplace and well accepted as binding contracts in the consumer context. *See Meridian Project Systems, Inc. v. Hardin Const. Co., LLC*, 426 F.Supp.2d 1101, 1107 (E.D. Cal. 2006) (holding that a "shrinkwrap" end-user license agreement formed an enforceable contract, even thought the buyer did not see it before purchasing software, where the agreement provided the buyer with the right to return the software if it did not agree to the license terms); *Lozano*, 216 F.Supp.2d at 1073[5] ("The Court finds that providing customers with terms and conditions after an initial transaction is acceptable, and that such terms and

---

[5]   Knutson argues that the district court should never have considered the *Lozano* decision because the order compelling arbitration in that case was vacated. However, as Sirius XM noted in its briefing to the district court, the order compelling arbitration was vacated *on other grounds*, related to class action waiver law then in effect in California. *See Lozano v. AT&T Wireless*, 2003 WL 25548566 (C.D. Cal., Aug. 18, 2003). Specifically, the *Lozano* arbitration order was vacated based on a finding that an arbitration agreement prohibiting class actions is unenforceable. The Court did not revisit the issue of whether the contract itself was enforceable where it was provided after an initial transaction. Moreover, this decision was reached before the Supreme Court's ruling in *Concepcion*, 131 S. Ct. 1740, which allows arbitration agreements to preclude class actions if they pass the unconscionability test discussed in Part V.B, *infra*.

conditions are enforceable, including arbitration clauses."). Thus, the fact that Sirius XM provided Knutson (or any consumer) with the Customer Agreement after the vehicle lease/purchase that registered the consumer for a free trial subscription does not mean that the parties have not formed a binding and enforceable contract when the customer elects to continue the subscription after receiving the Customer Agreement.

Knutson attempts to distinguish the controlling caselaw by arguing that, in *Bischoff* and *Lozano*, the contracts allowed for consumers to reject the terms of the contracts without a time limit. Of course, this is no distinction, as the Sirius XM contract also contains an unlimited cancellation provision. The decision in *Bischoff*, which has a fact pattern similar to this case, is particularly instructive here. In *Bischoff*, the consumer argued that an arbitration clause contained in a Customer Agreement was not binding where the Agreement was not provided until after the parties had entered their agreement for satellite programming, after the customer had purchased equipment, and after activation of service. *Id.* at 1103. The court rejected these arguments, expressly noting that the "length of time" between receipt of the terms of service and activation of service is not "dispositive on the issue of whether a valid arbitration agreement exists between the parties." *Id.* at 1105. Rather, "the more controlling issue is the economic and practical considerations involved in selling services to mass consumers which make it

acceptable for terms and conditions to follow the initial transaction." *Id.*

In reaching its decision, the *Bischoff* court took into consideration the fact that defendant DIRECTV was providing an ongoing service — as opposed to a sale of goods — and that the "Customer Agreement contains the terms of an ongoing contractual relationship between DIRECTV and its subscribers." *Id.* at 1104. Based on this, the court rejected the assertion that DIRECTV's actions in providing the Customer Agreement after activation of service were an attempt to add terms to the parties' relationship after the customer was already "on the hook" for services. *Id.* at 1103. As in *Bischoff*, the relationship here between Sirius XM and Knutson also involves the provision of an ongoing service and it is equally acceptable for Sirius XM to send the terms governing provision of that service after service has begun.

Knutson also tries to distinguish *Bischoff* by noting that, in that case, DIRECTV used the following language in its Customer Agreement: "If you do not accept these terms, please notify us immediately and we will cancel your service." App's Br. at p. 25. (citing *Bischoff*, 180 F.Supp.2d at 1101). Sirius XM's Customer Agreement here has almost identical language: "IF YOU DO NOT ACCEPT THESE TERMS, PLEASE NOTIFY US IMMEDIATELY AND WE WILL CANCEL YOUR SUBSCRIPTION." E.R. 032 (Customer Agreement, all-capitals text under box). Moreover, the language in the Customer Agreement in

*Bischoff* was even more restrictive because it purported to become effective immediately upon use of DIRECTV service and did not provide any window to review the terms. *See Bischoff* at 1101. And it should also be noted that unlike the plaintiff in *Bischoff*, who was locked into a paid, monthly subscription with a term commitment when he received the customer agreement from DIRECTV, Knutson was receiving a trial service from Sirius XM that was free to him for 90 days, which he could have cancelled at any time.

Similarly, in *Lozano*, the court upheld an arbitration clause found in a "Welcome Guide" within the box of a newly purchased cellular telephone: "The Court finds that providing customers with terms and conditions after an initial transaction is acceptable, and that such terms and conditions are enforceable, including arbitration clauses." *Lozano*, 216 F.Supp.2d at 1073. Knutson argues that because the agreement in *Lozano* was located in the box, the customer had the option of immediately canceling the contract or canceling within 30 days of activation. However, the significant fact (which Knutson cannot dispute) is that the consumer in *Lozano* would have already paid for and activated service before being provided with the contract. The *Lozano* court found that in such circumstances, a contract was formed. *See id.*

Apparently, in arguing that no contract was formed between the parties, Knutson would have Sirius XM obligated to provide him with a service without

being able to provide the terms of use to govern that service. Sirius XM would not be able to argue that Knutson was bound by the Customer Agreement's dispute resolution provision for claims arising on any day ***before*** he received that Agreement and had the opportunity to review it.[6] However, it does not automatically invalidate a contract to send it to a consumer after activation of a subscription, and the district court was correct to find that the Customer Agreement would be binding on Knutson if he did not cancel service upon receiving it.

Under the circumstances present here, Knutson assented to the contract and the arbitration provision is binding on him.

## B.  The Arbitration Provision Contained in Sirius XM's Customer Agreement Is Not Substantively Unconscionable.

Even when a contract has been formed between the parties, as detailed in Part V.A above, a party can sometimes challenge that agreement with generally applicable state-law defenses to a contract, such as unconscionability. As Knutson acknowledges, *both* procedural and substantive unconscionability must be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability. *See* Appellant's Brief, p. 27 (citing *Stirlen v. Supercuts, Inc.*, 51 Cal.App.4th 1519, 1533 (1997)); E.R. 112 (Order, at

---

[6]  Indeed, if a company does not send out a customer agreement for a time after opening an account for a subscriber, then it is the company (and not the consumer) who is at risk, as the company will not be able to assert if a dispute arises that a subscriber has assented to the terms of that customer agreement during the pre-delivery timeframe.

p. 6). Furthermore, Knutson, as the "'party opposing arbitration . . . has the burden of proving the arbitration provision is unconscionable.'" *Higgens v. Superior Ct.*, 140 Cal.App.4th 1238, 1249 (2006) (citation omitted). Knutson has not met that burden because the Customer Agreement is not substantively — as opposed to procedurally — unconscionable.

In Knutson's Opposition to Sirius XM's Motion to Compel Arbitration before the district court, Knutson raised an ineffectual challenge to the substantive unconscionability of the arbitration provision in **a single paragraph** of his brief. *See* E.R. 068-069 (Plaintiff's Opp. to Motion to Compel, at 24:22-25:3) (arguing only that the delay in delivery of the Customer Agreement rendered the contract substantively unconscionable). Sirius XM's reply pointed out this fatal deficiency in the unconscionability argument (*see* E.R. 89 (Sirius XM's Reply in Support of Motion to Compel, at p. 10:6-20)) and the district court specifically found that "Plaintiff fails to discuss the substantive terms of the arbitration provision." E.R. 114 (Order, at p. 10).

With the benefit of hindsight and the district court's pointed comment, Knutson has combed through the contract to attempt to identify any provision, however legitimate and irrelevant, that he can label "substantively

unconscionable."[7] He has now identified six provisions, but his argument fails as to each one.

Knutson's newly-formed attacks on the Customer Agreement do not show substantive unconscionability, because the terms of the arbitration provision are not "unduly harsh or oppressive" nor are they "so one-sided as to shock the conscience." *See, e.g. Concepcion*, 131 S. Ct. at 1746 (noting that under California law, a finding of unconscionability requires "a 'substantive' element" focusing on "'overly harsh' or 'one-sided' results") (citing *Armendariz v. Foundation Health Pyschcare Servs., Inc.*, 24 Cal.4th 83, 114 (2000)). Substantive unconscionability "focuses on the terms of the agreement and whether those terms are so one-sided as to shock the conscience." *See* Appellant's Brief, p. 30; *Davis v. O'Melveny & Myers*, 485 F.3d. 1066, 1075 (9th Cir. 2007). Moreover, under California law, arbitration agreements need only have a "modicum of bilaterality." *Armendariz*, 24 Cal.4th at 117; *see also* E.R. 114 (Order, at p. 10). Thus, an arbitration provision does not have to put both parties on completely equal footing in order to be enforceable. Only the most egregiously one-sided provisions meet

---

[7] As a general rule, this Court does not consider arguments raised for the first time on appeal. *See United States v. Greger*, 716 F.2d 1275, 1277 (9th Cir. 1983); *cf. Bolker v. C.I.R.*, 760 F.2d 1039, 1042 (9th Cir. 1985) (court has discretion to consider new arguments if narrow exceptions apply). Here, Knutson had a full opportunity to tell the district court all the reasons that he believed the arbitration provision to be substantively unconscionable; he failed to make **any** argument on this point, and waited until the district court pointed out the absence of any real argument to make an effort to peruse the contract.

the standard of substantive unconscionability.

Despite Knutson's failure to discuss any provision he contended was substantively unconscionable, the district court itself analyzed the Customer Agreement to determine whether the arbitration provision contained the required "modicum of bilaterality." *Id.* (citing *Armendariz*, 24 Cal.4th 83 at 117.) After looking beyond "facial neutrality" and examining the "effects of the challenged provision," the court concluded that "the arbitration provision provides for neutral arbitration." *Id.* (citing *Ting v. AT&T*, 319 F.3d 1126, 1149 (9th Cir. 2003)). Based on its analysis, the court concluded that the Agreement "contains all the hallmarks of substantive conscionability." ER 115 (Order, at p. 11).

Knutson now raises six challenges of substantive unconscionability, addressed in turn below. However, none of the Customer Agreement's provisions attacked by Knutson renders the arbitration provision substantively unconscionable.[8]

---

[8]  Even if an arbitration provision does contain some terms that are determined to be substantively unconscionable, courts have the discretion to sever those terms and enforce the remaining terms, so long as the entire arbitration provision is not "permeated by unconscionability." *Armendariz*, 24 Cal.4th at 122.

1.    **Sirius XM's Reservation of the Right to Modify the Customer Agreement as a Whole Does Not Render the Arbitration Provision Unenforceable.**

a.    **Arguments about substantive unconscionability of the entire Customer Agreement are for the arbitrator, not the Court, to decide.**

In his first attempt to demonstrate substantive unconscionability of the arbitration clause, Knutson focuses the Court's attention to a general Change of Terms provision (Section B.1) — located outside of the arbitration provision — which states that Sirius XM "RESERVE[S] THE RIGHT TO CHANGE THE TERMS OF THIS AGREEMENT AT ANY TIME." *See* Appellant's Br. at 31. He also points to the general Notice provision (Section J.1) about how subscribers will be notified of material changes to the Customer Agreement. *Id.* at 33. He then argues that Sirius XM's reservation of the right to alter the agreement, and the notice to be given of material changes, render the entire Customer Agreement substantively unconscionable. *See id.* at 31-35. Such challenges to the contract as a whole (and not specifically to the substantive unconscionability of the arbitration provision) are not for a court to decide; rather, Knutson should raise any such challenges to the contract as a whole (if appropriate) in arbitration.

As the Supreme Court explained in *Rent-A-Center, West, Inc. v. Jackson*, 130 S.Ct. 2772, 2778 (2010), there are two types of challenges under Section 2 of the FAA: challenges "specifically to the validity of the agreement to arbitrate" and

challenges "to the contract as a whole, either on a ground that directly affects the entire agreement (*e.g.*, the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid." Challenges to the validity of the contract as a whole, rather than the arbitration agreement specifically, are for the arbitrator to resolve. *See Buckeye Check Cashing*, 546 U.S. at 448-49 ("We reaffirm today that, regardless of whether the challenge is brought in federal or state court, a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator.").

Here, Knutson argues that the Agreement's "Changes of Terms" provision renders the entire contract unenforceable. *See* Appellant's Brief, p. 31-35; *id.* at 31 ("apparent mutuality [of the arbitration provision], **along with every other provision of the Customer Agreement**, is completely vitiated by the provision contained in section "B.1" of the Customer Agreement entitled "Changes to Terms" . . .) (emphasis added). This provision is not related to the viability of the arbitration provision that the district court found binding here, and thus does not factor into a determination of Sirius XM's motion to compel. *See, e.g., Rent-A-Center*, 130 S.Ct. at 2780 (noting that none of the plaintiff's substantive unconscionability challenges was "specific" to the arbitration provision). The United States Supreme Court precedent is clear that when a plaintiff challenges the

contract as a whole as unenforceable, it is for the arbitrator — and not the courts — to decide the validity of the contract, "including derivatively the validity of its constituent provisions (such as the arbitration clause)." *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1000 (9th Cir. 2010) (citing *Buckeye Check Cashing*, 546 U.S. at 445-446).

Thus, any challenges to Sections B.1 and J.1 of the Customer Agreement must be made in an arbitration.

### b. In any case, Sections B.1 and J.1 are not substantively unconscionable.

Knutson's attacks on the Change of Terms and Notice provisions of the Customer Agreement claim that because Sirius XM could have changed the terms of the agreement without mailing notice to Knutson (even though there is no allegation that Sirius XM did change any terms of the contract during the length of Knutson's subscription), the entire agreement is unconscionable and thus the arbitration provision is unconscionable. *See generally* Appellant's Br. at 31-35. Based on this hypothetical scenario, Knutson asserts that because this Court found a change of terms provision in an employment agreement to be substantively unconscionable in *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165 (9th Cir. 2003), it should also find unconscionability here and refuse to enforce the arbitration

provision.[9] However, the facts and the legal determinations of *Ingle* are inapposite, as discussed below.

The arbitration provision analysis in *Ingle* arose in an entirely different context. *Ingle* involved an employment agreement (a type held to a higher standard).[10] Unlike here, the provision that allowed the employer to unilaterally modify the *Ingle* employment agreement was contained ***within the arbitration agreement itself.*** *Id.* at 1179. Further, the unilateral modification provision was one of <u>seven</u> provisions found to be substantively unconscionable (*id.* at 1175-79), and the Court determined that it could not simply sever any unconscionable provisions — as was within its discretion to do — because the entire agreement was so permeated with unconscionability as to create an "insidious pattern ... that

---

[9]    Knutson also cites *Saika v. Gold*, 49 Cal.App.4th 1074 (1996), for the proposition that Sirius XM's reservation of right to modify the Agreement is misuse of the arbitration process and an impermissible "offensive weapon in one party's arsenal" as warned of by the court in *Saika*. Appellant's Brief, p. 31. However, the case has no relevance here because the arbitration agreement in the *Saika* case did not include a modification provision. *Saika* involved a medical malpractice action in which, after arbitration, a doctor sought to vacate the $325,000 award and requested a trial *de novo* based on a clause in the parties' arbitration agreement which permitted either party to request a trial with the superior court in the event any arbitration award exceeded $25,000. The Court of Appeal held that the trial *de novo* clause was unenforceable because it was obviously one-sided in favor of the doctor.

[10]    The *Ingle* Court explained that under California law, arbitration provisions in <u>employment agreements</u> raise a "rebuttable presumption of substantive unconscionability." *Id.* at 1174. The reason for this, noted by the California Supreme Court in *Armendariz*, 24 Cal.4th at 115, is that "[i]n the case of preemployment arbitration contracts, the economic pressure exerted by employers on all but the most sought-after employees may be particularly acute, for the arbitration agreement stands between the employee and necessary employment, and few employees are in a position to refuse a job because of an arbitration requirement." This concept is not applicable to a free radio trial subscription offered as a promotion.

functions as a thumb on Circuit City's side of the scale." *Id.* at 1180.

Importantly, the *Ingle* Court specifically *declined* to conclude that the unilateral modification provision, on its own, would have been enough to render the entire agreement unenforceable. *See id.* at 1179 n. 23 ("We draw no conclusion as to whether this term, by itself, renders the contract unenforceable."); *id.* (noting that the provision granting Circuit City the unilateral authority to modify or terminate the arbitration agreement was found by the Sixth Circuit <u>not</u> to render the contract unenforceable). In contrast, the *Ingle* Court did find that two other provisions (absent from Sirius XM's Customer Agreement) would have been sufficient on their own to render the arbitration agreement substantively unconscionable. *See id.* at 1174-75 (fact that arbitration requirement would apply only to employees' claims, and not to Circuit City's claims against employees, itself renders arbitration provision unconscionable); *id.* at 1178 (cost-splitting provision requiring employee who is unsuccessful in arbitration to pay Circuit City's costs and fees is in itself enough to render arbitration provision unconscionable).

Thus, even if this Court determines that the unilateral modification provision in the Customer Agreement is substantively unconscionable, it is not enough to

invalidate the entire arbitration provision on its own.[11]

The only other authority mentioned in Knutson's change of terms and notice arguments is offered in a footnote: *Sparks v. Vista Del Mar Child & Family Services*, 207 Cal.App.4th 1511, 1523 (2012). *See* Appellant's Brief, p. 31, n. 3. Knutson offers *Sparks* for the proposition that "[a]n agreement to arbitrate is illusory, if, as here, the employer can unilaterally modify the handbook." This quote from *Sparks* does not salvage his argument. *Sparks* conducts its analysis purely in the employment contract context, and the quote cited by Knutson is an unsupported one-sentence statement devoid of discussion or analysis of the modification provision. *See* 207 Cal.App.4th at 1523. Had the *Sparks* court analyzed this position under California law, it would have found authority holding the opposite: that reservation of a right to modify a contract does not render the contract unenforceable as illusory because the drafting party is bound by the covenant of good faith and fair dealing. *See, e.g., Martinez v. Scott Specialty Gases, In*c., 83 Cal.App.4th 1236, 1246 (2000) (holding that "an employer's reservation of the right to modify does not render the contract unenforceable as unconscionable, illusory or lacking in mutuality of obligation ..."); *24 Hour*

---

[11]  In any case, this Court has the power to sever the change of terms and notice provisions (which are not even at issue in this litigation) and affirm the district court's decision to compel arbitration because here, unlike with the contract in *Ingle*, the Sirius XM Customer Agreement is not insidiously one-sided. *See id.* at 1180 (explaining that severance was not possible when the arbitration provision was riddled with substantive unconscionability).

*Fitness, Inc. v. Superior Court*, 66 Cal. App. 4th 1199, 1214 (1998) (enforcing an arbitration agreement and finding it not illusory — even though the employer retained the right to amend it without any notice — based on a finding that the employer was impliedly bound under California contract law to exercise the right to amend fairly and in good faith); *see also Nelsen v. Legacy Partners Residential, Inc.*, 207 Cal. App. 4th 1115, 1120 (2012) (enforcing an arbitration agreement that allowed the employer to "modify" any provision of it "at any time and for any reason"). Because Sirius XM is likewise bound by the covenant of good faith and fair dealing when enforcing the Customer Agreement, the modification provision therein does not render the arbitration provision unconscionable.

Thus, as detailed above, Knutson's argument that the Customer Agreement lacks mutuality and an actual notice requirement does not support a finding here that the arbitration provision is substantively unconscionable.

> **2. Sirius XM's Customer Agreement Does Not, as Knutson Asserts, Preclude Knutson From Seeking Statutory Damages or Other Available Remedies for His TCPA Claims.**

Knutson next argues that the Customer Agreement is substantively unconscionable because it contains a Limitation of Liability Provision (E.R. 035, Customer Agreement, at Section H.2) that, as Knutson describes it, "attempts to preclude any type of liability on its part" including "direct" damages. *See* Appellant's Brief, pp. 36-38. Knutson argues that the Limitation of Liability

provision is unconscionable and would not allow him to seek the TCPA's statutory damages of $500 and trebled damages of $1,500 per call. *See id.*, p. 37.

As with the provision discussed above, Knutson's complaint about the Limitation of Liability provision goes to the Customer Agreement as a whole, not the arbitration clause, and thus must be addressed to the arbitrator rather than the court. *See Buckeye Check Cashing*, 546 U.S. at 448-49.

In any case, even if the Court were to consider Knutson's argument that the Customer Agreement is unconscionable in seeking to limit Sirius XM's liability, Knutson ignores key provisions in the Customer Agreement. While the challenged provision is broadly worded, the Customer Agreement makes clear that the provision is limited by applicable state and federal (such as TCPA) law. The Customer Agreement provides "SOME JURISDICTIONS MAY NOT ALLOW . . . THE LIMITATION OF CERTAIN DAMAGES, SO SOME OF THE ABOVE DISCLAIMERS, WAIVERS AND LIMITATIONS OF LIABILITY MAY NOT APPLY TO YOU." (E.R. 035, Customer Agreement, Section H.5.) The Customer Agreement also expressly permits recovery of damages that would be permitted under applicable laws (such as the TCPA). *See* E.R. 035 (Customer Agreement, Section H.6) (stating that the limitations provisions apply "UNLESS LIMITED OR MODIFIED BY APPLICABLE LAW").

Knutson compares the Customer Agreement's limitation of liability

provision to a provision found to be substantively unconscionable in *Newton v.*

*American Debt Services, Inc.*, 854 F.Supp.2d 712 (N.D. Cal. 2012). The provision

in *Newton* (the only authority offered by Knutson for this argument) stated:

> Under no circumstances shall Global or the Bank ever be
> liable for any special, incidental, consequential,
> exemplary or punitive damages. IN NO EVENT SHALL
> THE LIABILITY OF GLOBAL OR THE BANK
> UNDER THIS AGREEMENT EXCEED THE
> AMOUNT OF FEES YOU HAVE PAID UNDER THIS
> AGREEMENT.

*Id.* at *8. The agreement in *Newton* did not contain the key limiting language

found in the Customer Agreement here, and *Newton* is therefore irrelevant.[12]

Thus, to the extent the limitation of liability provision conflicts with

remedies allowed under California law or damages available under the TCPA,

Sections H.5 and H.6 specifically preserve Knutson's right to seek any damages in

arbitration allowed under California state law and the TCPA.

### 3. Sirius XM's Arbitration Provision Does Not Authorize the Arbitrator to Require Plaintiffs to Pay Sirius XM's Attorneys' Fees if They Could Not Be Awarded by a Court.

Knutson's third stab at a new substantive unconscionability argument is to

argue in a single, short paragraph that the arbitration provision is substantively

---

[12] Moreover, the arbitration provision found unconscionable in *Newton* had several other issues not in play here, including (1) a clause providing that an unsuccessful consumer would pay the debt solutions agency's fees and costs; (2) the requirement that the consumer would need to bring any arbitration in Tulsa, Oklahoma; and (3) a clause establishing that the debt solutions agency would have the unilateral power to select the arbitrator. *See Newton*, 854 F. Supp. 2d at 725-27.

unconscionable "because it poses a risk to consumer plaintiffs that they will have to pay the defendant's attorneys fees, as was the case in *Newton*." Appellants' Br. at 38. Knutson cites a portion of the Agreement which states: "a party may recover any or all expenses from another party if the arbitrator, applying applicable law, so determines." *Id*. He then claims that this is the same as the unconscionable *Newton* provision that **required** an arbitrator to award attorneys fees, costs, and expenses to the prevailing party. *See Newton*, 854 F.Supp.2d at 725. However, this argument is based on a deliberate misreading of the arbitration provision and bears no support in the Agreement or in the AAA rules that govern the parties' arbitration.

First, under the Customer Agreement's arbitration agreement, an arbitrator is not *required* to award fees, as was the case with the agreement in *Newton*. The Sirius XM arbitration provision, when read in full, expressly provides that consumers ordinarily will <u>not</u> have to pay Sirius' attorneys fees unless the arbitrator, in his discretion, finds otherwise. The provision states:

> In no event will you be required to reimburse us for any arbitration filing, administrative, or hearing fees in an amount greater than what your court costs would have been if the Claim had been resolved in a state court with jurisdiction. However, we will advance or reimburse your fee if the arbitration firm or arbitrator determines there is good reason requiring us to do so, or if you ask us and we determine there is good reason for doing so. Each party will bear the expense of that party's attorneys, experts and witnesses, and other expenses, regardless of

> which party prevails, but a party may recover any or all
> expenses from another party if the arbitrator, applying
> applicable law, so determines.

E.R. 032 (Customer Agreement, Section I.5)  Thus, the default provision is that

each party will bear its own fees, unlike in *Newton*.

Second, the ability to award fees in a unique case is not limited to

arbitration.  The arbitration provision does not allow the arbitrator to provide any

relief beyond what would be available if the suit were brought in court; indeed, the

AAA rules for consumer arbitration, which Sirius is contractually bound to follow

and are expressly incorporated into the arbitration provision, limit the arbitrator's

award to that which the parties "could have received in court."  E.R. 100 (AAA

Consumer Arbitration Rules, Section C-8).  Therefore, the arbitration agreement

poses no greater risk that a consumer would have to pay Sirius XM's attorneys'

fees than if he or she proceeded in court.

### 4.    Knutson Does Not Show That the Type of Claims Exempted From Arbitration Solely Benefit Sirius XM.

In his next attempt to manufacture unconscionability, again in a one-

paragraph argument, Knutson points to the arbitration provision's exclusion of

claims brought under two specific statutes, the Communications Act of 1934 and

the Electronic Communications Privacy Act, and broadly concludes that Sirius XM

"carves out and reserves for itself the right to litigation [sic] claims most important

to it because they relate to communications law and Sirius is in the satellite radio

business." Appellant's Brief, p. 39. In making this allegation, Knutson does not identify what claims under these statutes would be "most important" or any way beneficial to Sirius XM, and he does not explain why the carve-out would be unilaterally beneficial to Sirius XM. This is likely because no such arguments can be made with a straight face.

Indeed, claims under two statutes identified in the arbitration provision as being exempt from arbitration – the Communications Act of 1934 and the Electronic Communications Privacy Act – are the kinds of claims brought by *consumers* (such as Knutson) against *businesses* (such as Sirius XM). *See, e.g., In re Easysaver Rewards Litigation*, 737 F.Supp.2d 1159 (S.D. Cal. 2010) (consumer class action brought against internet retailer under the Electronic Communications Privacy Act); *Brown v. Washington/Baltimore Cellular, Inc.*, 109 F.Supp.2d 421 (D. MD. 2000) (class actions by wireless telephone subscribers under the Communications Act of 1934 to recover allegedly unlawful late fee charges.)[13] In

---

[13] In contrast, in *Cisneros v. American General Financial Services, Inc.*, C11-02869 CRB, 2012 WL 3025913 (N.D. Cal., July 24, 2012), the case cited by Knutson in support of this "carve out" argument, the arbitration provision clearly excluded from arbitration certain remedies that only benefited the drafting party. *Cisneros* involved predatory door to door sales of computer systems to Spanish-speaking immigrants. (The named plaintiff was pressured into signing the contract – which was in English – after the sales agent physically refused to leave her home, even waiting while she left to pick up her child from school.) In addition to a host of issues with the arbitration provision, the court held that it was unconscionable for the defendant to require consumers to arbitrate all claims but allow itself the option of resorting to self-help or judicial remedies of replevin, garnishment, repossession, or foreclosure to resolve its disputes with consumers. *Id.* at *7.

other words, it could be the consumer, and not Sirius XM, that has the option to bring litigation rather than arbitration over these sorts of claims. Thus, the carve-out of these claims from arbitration fits well within the "bilaterality" required of arbitration agreements. Accordingly, their exclusion from the requirement to arbitrate is not so one-sided as to "shock the conscience."

### 5.  Sirius XM's Arbitration Provision Does Not Require Consumers to Arbitrate Claims in New York.

In the fifth substantive unconscionability argument Knutson advances in regard to the arbitration provision, he erroneously states that, as in *Newton*, the arbitration agreement contains a forum selection clause that will require him to arbitrate his claims in New York. Appellant's Brief, p. 39-40. But a quick review of the Customer Agreement demonstrates that the forum selection clause applies only if a court determines that the arbitration provision is "null and void." *See* E.R. 032 (Customer Agreement, Section I.6) ("If this entire agreement to arbitrate shall be null and void, then the parties agree that any actions shall be brought in the State or Federal courts of New York, New York"). There is simply nothing in the Agreement, or in the AAA rules, that would require any consumer to arbitrate claims against Sirius XM in New York. To the contrary, the AAA rules invoked by the arbitration provision provide that for claims under $10,000 (like this one), "the dispute shall be resolved by the submission of documents" and no hearing will be required unless requested by a party or unless the arbitrator decides that a

38

hearing is necessary. E.R. 099 (AAA Consumer Arbitration Rules, Section C-5). And if a party wishes to request a hearing (as Knutson would be free to do), Sirius XM has agreed to pay arbitration fees for the first day of that hearing. E.R. 032 (Customer Agreement, Section I.5).

Thus, there is no ground for finding the arbitration provision unconscionable for requiring arbitration in New York City, as it does no such thing.

### 6. Class Action Waivers Are Not by Themselves Substantively Unconscionable.

Knutson's final attempt to make some showing of substantive unconscionability and avoid arbitration is to argue that class action waivers are, by themselves, substantively unconscionable because they favor the drafting party. Knutson cites to one pre-*Concepcion* decision as authority for this proposition — *Stern v. Cingular Wireless Corp.*, 453 F. Supp. 2d 1138 (C.D. Cal. 2006), which itself relied heavily on the California Supreme Court's unconscionability analysis of class action waivers conducted in *Discover Bank v. Superior Court*, 36 Cal.4th 148 (2005). However, as Knutson well knows, the United States Supreme Court overruled *Discover Bank* in its decision in *Concepcion*, 131 S. Ct. at 1748. It is therefore disingenuous for Knutson to argue that *Stern* supports an argument that a class action waiver is inherently unconscionable, when *Stern*'s analysis is based on an decision abrogated by *Concepcion*.

Indeed, as noted by this Court in *Coneff v. AT&T Corp.*, 673 F.3d 1155,

39

1158 (9th Cir. 2012), the Supreme Court in *Concepcion* "observed that individualized proceedings are an inherent and necessary element of arbitration" and that "[r]equiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA." *Id.* (citing *Concepcion*, 131 S. Ct. at 1748, 1750-52). This Court further noted that even if some individuals choose not to arbitrate their claims if forced to do so individually because the damages are too small to be worth the trouble, such a concern "however, worthwhile, cannot undermine the FAA." *Id.* at 1159 (citing *Concepcion* at 1753). Since the decision in *Concepcion*, a number of California and federal courts have enforced arbitration provisions that contain class action waivers. *See, e.g., Nelson v. Legacy Partners Residential, Inc.*, 207 Cal.App.4th 1115 (2012); *Iskanian v. CLS Transportation Los Angeles, LLC*, 206 Cal.App.4th 949, 959–961 (2012); *Jasso v. Money Mart Exp., Inc.* 11-CV-5500 YGR, 2012 WL 1309171, *4–*7 (N.D. Cal., April 13, 2012); *Sanders v. Swift Transp. Co. of Arizona, LLC*, 843 F.Supp.2d 1033, 1036-37 (N.D. Cal. 2012); *Lewis v. UBS Financial Services Inc.*, 818 F.Supp.2d 1161 (N.D. Cal. 2011); *Murphy v. DIRECTV, Inc.*, 2011 WL 3319574, *4 (C.D. Cal., Aug. 2, 2011); *Hendricks v. AT & T Mobility, LLC*, 823 F.Supp.2d 1015, 1025 (N.D. Cal. 2011). The class action waiver is not inherently and substantively unconscionable.[14]

---

[14]   It is unclear for what purpose Knutson cites *Goodridge v. KDF Automotive*

Finally, it is worth noting that the significant statutory damages under the TCPA were structured so that consumers such as Knutson would have the incentive to pursue TCPA claims individually. *See* 137 Cong. Rec. S16204-01 (1991) (remarks of author of the TCPA expressing his "hope that States will make it as easy as possible for consumers to bring such actions, preferably in small claims court"). This Court should not take Knutson up on his invitation to disregard *Concepcion* and rule that a waiver of class procedures in arbitration is substantively unconscionable.

## VI.   **CONCLUSION**

Knutson accepted the terms of the Customer Agreement when he did not cancel service after receiving the Agreement. He could have, but did not, exercise his right to cancel the agreement, and is therefore bound by its terms. Knutson's substantive unconscionability arguments, raised for the first time on appeal, each fails to provide a basis for invalidating the arbitration clause for one or more reasons.

The Court should affirm the district court's order dismissing the putative class action and compelling Knutson to individual arbitration.

---

*Group, Inc.*, D060269, 2012 WL 3635279 (Cal. Ct. App., Aug. 24 2012), in his argument about class waivers, as none of the provisions determined to be substantively unconscionable in that matter is present here. *See* Appellant's Brief, p. 40-41, n. 6. *Goodridge* did not involve any discussion of a class action waiver, so Knutson appears to have included it for nothing more than the general proposition that terms that are unduly oppressive will not be enforced.

Dated:  November 6, 2012          MANATT, PHELPS & PHILLIPS, LLP


By:  /s/ Chad Hummel
      CHAD S. HUMMEL
      BECCA WAHLQUIST
      LYDIA M. MENDOZA
        *Attorneys for Defendant-Appellant*
        SIRIUS XM RADIO INC.

## STATEMENT OF RELATED CASES

Pursuant to Ninth Circuit Rule 28-2.6, the undersigned counsel declares that there are no known related cases pending in this Court.

## CERTIFICATE OF COMPLIANCE PURSUANT TO
## FED. R. APP. 32 (a)(7)(c) AND CIRCUIT RULE 32-1

I certify pursuant to Fed. R. App. Proc. 32(a)(7)(C) and Ninth Circuit Rule 32-1 that the attached Brief of Appellee Sirius XM Radio Inc. complies with the type-volume limitation of Fed. R. App. Proc. 32(a)(5)-(6) As it is proportionately spaced, has a typeface of 14 points, and contains 10,120 words, excluding the portions exempted by Fed. R. App. Proc. 32(a)(7)(B)(iii).

Dated:  November 6, 2012          MANATT, PHELPS & PHILLIPS, LLP


By: /s/ Chad Hummel
CHAD S. HUMMEL
BECCA WAHLQUIST
LYDIA M. MENDOZA
*Attorneys for Defendant-Appellant*
SIRIUS XM RADIO INC.

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on November 6, 2012 .

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated:  November 6, 2012          MANATT, PHELPS & PHILLIPS, LLP

By:  /s/ Chad Hummel_____
     CHAD S. HUMMEL
     BECCA WAHLQUIST
     LYDIA M. MENDOZA
       *Attorneys for Defendant-Appellant*
     SIRIUS XM RADIO INC.

44